**RIVERVIEW INVESTMENTS, INC., et al., Plaintiffs-Appellants,**

v.

**OTTAWA COMMUNITY IMPROVEMENT CORPORATION, et al., Defendants-Appellees.**

No. 84–3445.

United States Court of Appeals, Sixth Circuit.

Argued April 18, 1985.

Decided and Filed July 31, 1985.

As Amended on Denial of Rehearing and Rehearing En Banc Oct. 9, 1985.*

* Order on Rehearing is published at 774 F.2d 162. The portions of the order amending the original opinion are incorporated herein.

Robert E. Manley, Andrew S. Lipton, argued, Manley, Jordan & Fischer, Cincinnati, Ohio, Ronald S. Moening, Robison, Curphey & O'Connell, Toledo, Ohio, for plaintiffs-appellants.

Michael E. O'Malley, Schroeder, Schroeder & O'Malley, Ottawa, Ohio, Kelley Stimpson, argued, Schnorf, Wanick, Loyd & Engwert, Toledo, Ohio, David M. Schnorf, for defendants-appellees.

Before MERRITT and WELLFORD, Circuit Judges and EDWARDS, Senior Circuit Judge.

MERRITT, Circuit Judge.

In this civil rights and antitrust case against Ottawa Community Development Corporation, a corporation authorized to approve the issuance of industrial revenue bonds, plaintiff appeals the District Court's order granting defendant's motion for summary judgment on the grounds that plaintiff's constitutional right to procedural due process was not violated under the Fourteenth Amendment and 42 U.S.C. § 1983 and that plaintiff incurred no antitrust inju-

ry pursuant to 15 U.S.C. §§ 1 and 2. We affirm the District Court's order regarding the section 1983 claim and reverse and remand its order concerning the antitrust injury.

**I.**

Riverview Investments, Inc., plaintiff, entered into a contract with Chase Shopping Centers, Inc. to develop a piece of plaintiff's property in Ottawa, Ohio, into a K-Mart store and related commercial establishments. The agreement depended upon defendant's approval of the issuance of industrial revenue bonds to finance plaintiff's development project. Zappala and Company, Inc., an investment banking corporation, formally applied for and was denied the bonds. Consequently, the Ottawa Community Improvement Corporation voted not to certify the project.

The Ottawa Community Improvement Corporation is a non-profit corporation under contract with the village of Ottawa, for

the sole purpose ... to advance, encourage and promote the industrial economic, commercial and civic development of the Village of Ottawa, by acting as the designated agency of the Village of Ottawa, for the industrial, commercial, distribution, and research development in such political subdivision in accordance with Section 1724.10, Revised Code.

(JA. at 92.)

The Ottawa Community Improvement Corporation has an agreement with the Village of Ottawa which, among other things, authorizes the Corporation to approve the issuance by the City of industrial revenue bonds. (JA. at 101–02.) Three-fifths of the Corporation's members are private citizens, several of whom have financial interests in downtown Ottawa businesses.

Plaintiff brought suit in District Court arguing first that defendant, under color of state law, deprived plaintiff of its constitutional right to procedural due process by refusing to approve the issuance of the industrial revenue bonds. Plaintiff's second argument is that defendant's action

violated federal and state antitrust law. Upon the Magistrate's recommendation, the District Court granted defendant's motion for summary judgment. Plaintiff appeals the District Court's judgment.

## II.

To establish a § 1983 action, plaintiff must show that a state official or representative, acting under color of state law, deprived plaintiff of a constitutionally protected right without due process. Since there is no dispute that the Ottawa Community Corporation acted under color of state law, we need focus only on whether plaintiff was deprived of a constitutionally protected right without due process.

■ Those actions which deprive plaintiff of liberty or property trigger the due process requirement of the Fourteenth Amendment. *Sullivan v. Brown,* 544 F.2d 279, 281 (6th Cir.1976). Plaintiff's central argument is that it was deprived of its property interest in the bonds without due process. In effect, plaintiff claims that its interest in the industrial revenue bonds is a property interest constitutionally protected by the Fourteenth Amendment. Specifically, plaintiff contends that the bonds are a statutory entitlement in which plaintiff has a property interest.

■ To have an enforceable claim to an entitlement, the claim "must be derived from a statute or legal rule or through a mutually explicit understanding." *Leis v. Flynt,* 439 U.S. 438, 442, 99 S.Ct. 698, 701, 58 L.Ed.2d 717 (1979). Generally, to have a protected property interest in a statutory benefit, a person must have more than a subjective need, desire or expectation that he will receive the benefit. Rather the person must "have a legitimate claim of entitlement to it." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

■ Property interests are created and "defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlements to those benefits." *Id.* at 577, 92 S.Ct. at 2709. The

salient feature of "[t]he Fourteenth Amendment's procedural protection of property is a safeguard of the security interests that a person has already acquired in specific benefits." *Id.* at 576, 92 S.Ct. at 2708. Our system of property is designed "to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined. It is a purpose of the constitutional right to a hearing to provide an opportunity for a person to vindicate those claims." *Id.* at 577, 92 S.Ct. at 2709. A due process hearing is required when there is a statutory entitlement to a benefit, an entitlement the denial of which injures the recipient. *Goldberg v. Kelly,* 397 U.S. 254, 262–65, 90 S.Ct. 1011, 1017–19, 25 L.Ed.2d 287 (1970).

■ The authority for issuing the bonds at issue herein derives from a provision of the Ohio Constitution that refers to the issuance of the bonds as "in the public interest and a proper public purpose." Ohio Const. art. VIII, § 13. This constitutional provision is specifically expressed in Ohio Rev.Code Ann. § 165.03(A) (Page 1984) which discusses the form and purposes of the bonds and the authority of the issuer. The statutory language clearly makes issuing the bonds discretionary. The statute states that "[a]n issuer *may* issue bonds for the purpose of providing moneys to acquire ... one or more projects...." Ohio Rev.Code Ann. § 165.-03(A) (Page 1984) [emphasis supplied]. Additionally, Ohio case law asserts that the term "may" is generally used as a discretionary term. *Dorrian v. Scioto Conservation Dist.,* 27 Ohio St.2d 102, 109, 271 N.E.2d 834, 837 (1971).

Additionally, an entitlement does not arise just because the Corporation has approved the bond applications of other applicants. The approval of other applications does not in itself create a legitimate expectation of entitlement on the part of the plaintiff. Since the Corporation did not deprive plaintiff of a property right in the bonds, there has been no constitutional violation. Therefore, § 1983 has not been violated and the District Court's judgment on this issue is affirmed.

### III.

Plaintiff alleges that some of the defendants who are members of the Corporation have interests in downtown businesses and are opposed to suburban development. Plaintiff claims that they conspired as members of a private corporation to deny Zappala's application for industrial revenue bonds in order to prevent plaintiff from entering the market as their competitor. Plaintiff contends that this alleges an antitrust injury. The District Court held that plaintiff lacks standing to assert a federal antitrust violation because plaintiff suffered no antitrust injury. The District Court further held that even if plaintiff suffered an antitrust injury, defendant's conduct falls under the "state action" exemption to the antitrust laws. We disagree with the first holding and remand for reconsideration of the second.

■ A person has standing in an antitrust action when the following three-part test is satisfied:

1. Defendant has caused plaintiff injury in fact.
2. The interest plaintiff seeks to protect is arguably within the zone of interests protected by the relevant antitrust statute.
3. Plaintiff must allege an antitrust injury.

*Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1235 (6th Cir.1981).

It is undisputed that plaintiff has alleged damage in fact when defendant failed to certify Zappala's application for industrial revenue bonds. Plaintiff also alleges that as a direct result of this denial, plaintiff's deal with Chase to build the K-Mart fell through and, additionally, that plaintiff's plans to develop its adjacent property for related commercial uses were defeated. The question is whether the interest plaintiff seeks to protect is arguably within the zone of interests protected by the relevant antitrust statute.

■ Plaintiff's interest in constructing a business, one that would compete with downtown businesses, is arguably within the zone of interests protected by the antitrust laws. Such competition is the type of interest the antitrust legislation is designed to protect. Consequently, defendants' alleged action may undermine competition between downtown businesses and similar businesses in the nearby suburbs. Defendants' alleged concerted efforts to prevent plaintiff from entering the local market harm not merely a single competitor, but competition generally and therefore runs afoul of the antitrust laws. *Brown Shoe Co. v. United States*, 370 U.S. 294, 320, 82 S.Ct. 1502, 1521, 8 L.Ed.2d 510 (1962). The character of defendants' alleged action has a monopolizing tendency which is proscribed by the antitrust legislation. *Klor v. Broadway-Hale Stores*, 359 U.S. 207, 211, 79 S.Ct. 705, 708, 3 L.Ed.2d 741 (1959). Federal antitrust law proscribes concerted efforts that interfere with the "natural flow" of trade and that have a monopolistic effect on commerce. *Id.* Concerted actions resulting in a restraint of trade threaten the economic freedom to compete. *United States v. Topco Associates, Inc.*, 405 U.S. 596, 610, 92 S.Ct. 1126, 1134, 31 L.Ed.2d 515 (1972). And freedom to compete may not be restricted even when it is believed doing so in one area will promote competition in another area. *Id.*

■ Defendants' conduct as alleged in the complaint tends to create a protected monopoly in certain downtown businesses by preventing the creation of new enterprises to freely compete with them. Downtown businesses are insulated from outside challenge which in turn permits them to control business practices and prices in the Ottawa vicinity. Plaintiff's interest in competing with downtown businesses is clearly within the zone of interests protected by the antitrust laws.

In finding an antitrust injury it is irrelevant what means are employed to restrain competition. Regarding Section 2 of the Sherman Act, what matters is that the freedom to compete is restrained. Actual exclusion of competitors from the market is not required. The statute is violated when individuals such as the members of the Ottawa Community Improvement Corporation "combine or conspire to acquire or maintain the power to exclude competitors" from interstate commerce "provided that

they have the intent and purpose to exercise that power." *American Tobacco Co. v. United States*, 328 U.S. 781, 809, 66 S.Ct. 1125, 1138, 90 L.Ed. 1575 (1946).

In the instant case, the record indicates that plaintiff's agreement with Chase concerning the K-Mart and related commercial enterprises required industrial revenue bonds for two interrelated reasons. First, the acquisition of such bonds was made a condition of the agreement. (JA. at 47 and 49.) Second, the record suggests that the project was economically infeasible without the bonds. (JA. at 49.) The record as it now stands indicates that there were no conventional alternatives to financing by industrial revenue bonds. (JA. at 150.) These facts tend to show that defendants had power to exclude plaintiff from competition.

The District Court indicated that there were alternative means of financing plaintiff's development project. Therefore, it was not defendants' conduct that denied plaintiff's entrance into the market. It is unclear what legal authority says that the existence of alternative means of financing precludes finding an antitrust injury. Case authority holds that denying a loan under certain circumstances may be sufficient for finding such an injury. *Malamud v. Sinclair Oil Corp.*, 521 F.2d 1142, 1152 (6th Cir.1975).

In the instant case, plaintiff was a potential competitor in a market allegedly dominated by several of the defendants. Plaintiff's entrance into this market might benefit consumers by lowering prices and providing a greater diversity in products. Plaintiff has, therefore, alleged facts which, if true, constitute an antitrust injury, and hence has standing to bring this action.

### IV.

Despite plaintiff's standing to bring the antitrust action, summary judgment was appropriate if defendants' action falls under the "state action" exemption to the antitrust laws.

Anticompetitive behavior is exempt from the federal antitrust laws when it derives "its authority . . . from the legislative command of the state." *Parker v. Brown*, 317 U.S. 341, 350, 63 S.Ct. 307, 313, 87 L.Ed. 315 (1943). Further, a municipality's anticompetitive behavior must derive from action of the state in its sovereign capacity or promote a "clearly articulated and affirmatively expressed state policy." *Community Communications Co. v. City of Boulder, Colo.*, 455 U.S. 40, 52, 102 S.Ct. 835, 841, 70 L.Ed.2d 810 (1982). The policy must be one "to displace competition with regulation or monopoly . . . ." *City of Lafayette, Louisiana v. Louisiana Power & Light Co.*, 435 U.S. 389, 413, 98 S.Ct. 1123, 1136, 55 L.Ed.2d 364 (1978). For the exemption to apply it must be " 'that the legislature contemplated the kind of action complained of.' " *Id.* at 415, 98 S.Ct. at 1138 quoting *City of Lafayette, Louisiana v. Louisiana Power & Light Co.*, 532 F.2d 431, 434 (5th Cir.1976). Further, the contemplated regulatory activity must be "actively supervised" by the state. 435 U.S. at 410, 98 S.Ct. at 1135. See *California Liquor Dealers v. Midcal Aluminum, Inc.*, 445 U.S. 97, 105, 100 S.Ct. 937, 943, 63 L.Ed.2d 233 (1980).

Two recent Supreme Court cases reaffirm a two-pronged test for determining when a defendant's conduct is eligible for a "state action" exemption. The first prong requires that the anticompetitive behavior derive from a clearly articulated state policy; the second prong requires active supervision of the anticompetitive behavior, but only when the actor is a *private* party rather than a municipality, a modification or clarification of previous law. *Town of Hallie v. City of Eau Claire*, —— U.S. ——, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985); *Southern Motor Carrier Rate Conference, Inc. v. United States*, —— U.S. ——, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985).

In the instant case, the first prong is satisfied because decisions increasing or restricting competition, though not explicitly stated or recognized in the Ohio statute, are a logical and necessary outcome of the authority to grant industrial revenue bonds for the purpose of protecting jobs. *Town of Hallie v. City of Eau Claire, supra*, —— U.S. at ——, 105 S.Ct. at 1717.

Determining whether the second prong of the test is satisfied is more difficult in this case. Active supervision is required only when the actor is a private party. *Id.* at ——, 105 S.Ct. at 1718. ("[T]he active supervision requirement should not be imposed in cases in which the actor is a municipality." (footnote omitted)) The question is whether the Ottawa Community Improvement Corporation is a private, nonmunicipal party, and, if so, whether it is actively supervised.

The case is therefore remanded for reconsideration in light of *Town of Hallie v. City of Eau Claire*, —— U.S. ——, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985), and *Southern Motor Carriers Rate Conference, Inc. v. United States*, —— U.S. ——, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985) cases decided after the District Court's decision in the instant case. Justice Powell's opinions for the Court in these cases require that a determination be made regarding the following questions, determinations best left in the first instance to the District Judge following an evidentiary hearing. These questions are: (1) Whether the Village of Ottawa or the Ottawa Community Improvement Corporation made the effective decision to reject appellant's bond application. If the District Judge concludes that the Village of Ottawa did, the order denying relief should be reentered. (2) If the District Judge determines that the Community Improvement Corporation made the effective decision, then evidence should be taken on whether in rendering its decision the Community Improvement Corporation was actively supervised by the state. If there was such supervision, the decision was protected under state action immunity, otherwise not.

Accordingly, the judgment of the District Court is affirmed in part and reversed in part and the case is remanded for further proceedings consistent with this opinion.