**CITY COMMUNICATIONS, INC., a Michigan corporation, Plaintiff,**

v.

**CITY OF DETROIT, a Municipal corporation; Barden Cablevision of Detroit, Inc., a Michigan corporation; and MacLean–Hunter Cable TV, Inc., a Canadian corporation, Defendants.**

No. 86–CV–71087–DT.

United States District Court, E.D. Michigan, S.D.

Sept. 28, 1988.

Schnader, Harrison, Segal & Lewis by Peter S. Greenberg, Christine C. Levin, Philadelphia, Pa., Butzel, Long, Gust, Klein & Van Zile by William M. Saxton, Keefe A. Brooks, Detroit, Mich. (Hyde & Mercer, William R. Hyde, Jr., Washington, D.C., of counsel), for plaintiff.

Dickinson, Wright, Moon, Van Dusen & Freeman by W. Gerald Warren, Detroit, Mich., for Barden Cablevision of Detroit, Inc.

Honigman, Miller, Schwartz & Cohn by I.W. Winsten, Detroit, Mich., for City of Detroit.

William J. DeBiasi, Taylor, Mich., for MacLean–Hunter Cable TV, Inc.

## OPINION

GILMORE, District Judge.

With this opinion, the Court writes the last chapter in the ongoing dispute between City Communications, the City of Detroit, Barden Cablevision, and MacLean–Hunter Cable TV, Inc.[1]

The lawsuit arises out of the award of a cable TV franchise by the City of Detroit (City) to defendant Barden Cablevision and defendant MacLean–Hunter (collectively referred to as Barden). The complaint of City Communications (CCI) alleges, *inter alia,* that the defendants violated Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1 and 2, by manipulating the franchise award process to insure that Barden would be the successful applicant, and that the City thereafter improperly acquiesced in Barden's demand to eliminate from its proposal virtually all of the features which had provided the basis for the award of the franchise to Barden.

In a previous opinion, the Court granted the City's motion to dismiss the antitrust counts as to it, concluding that the City was entitled to state action immunity. However, in the same opinion, the Court denied a similar motion by Barden. *City*

*Communications, Inc. v. City of Detroit,* 650 F.Supp. 1570, 1578–79 (E.D.Mich.1987).

In a subsequent ruling on Barden's motion for reconsideration, the Court framed the antitrust issue as follows:

This Court agrees with the defendants that, once it is determined that the municipality is entitled to immunity from the antitrust laws, the private parties who are regulated by the municipality are also entitled to immunity as long as the "effective decision-maker" is a municipality rather than private parties. It is precisely on this issue that the Court is faced with a factual dispute. Were the City of Detroit's decisions that permitted the defendants to retain their exclusive cable television franchise made by the City, or did Barden and MacLean have so much influence that the decisions were effectively those of private defendants....

660 F.Supp. at 935.

The Court thereupon denied Barden's motion for summary judgment, holding that an issue of fact existed over who was the effective decision-maker in granting Barden the cable TV franchise for the City of Detroit, and in approving the subsequent modifications.

To allow discovery in contemplation of another motion for summary judgment on the effective decision-maker issue, the Court on January 13, 1988, extended the discovery cutoff in this case until May 1, 1988, on the effective decision-maker issue only. All discovery on the effective decision-maker issue is complete, and defendant's motion for summary judgment can again be considered.

Barden asserts that the award of the franchise, and every challenged modification of the franchise, was approved and enacted by the Detroit City Council in public meetings by formal vote after input by the Mayor, the City Council, and the Detroit Cable Communications Commission (DCCC).

---

1. For prior opinions on this matter, see *City Communications, Inc. v. City of Detroit,* 650 F.Supp. 1570 (E.D.Mich.1987); *City Communications, Inc. v. City of Detroit,* 660 F.Supp. 932 (E.D.Mich.1987); and *City Communications, Inc. v. City of Detroit,* 685 F.Supp. 160 (E.D. Mich.1988).

Barden notes particularly that plaintiff admits that there was no corruption in the franchise process in that it responded to an interrogatory on March 4, 1988 that *"Plaintiff does not contend that Barden or MacLean–Hunter engaged in kickbacks or bribes, or anything of that nature."*

Moreover, Barden contends that Councilman Ravitz, the only person plaintiff deposed among the City Council, the Mayor and the Cable Commission members testified that all of the City Council members viewed the grant of a cable franchise as one of the most important decisions to come before the Council, and that they were all acting in what they believed to be the best interest of the City of Detroit.

Barden also contends that, to the extent it petitioned the decision makers to grant the franchise and to modify it, such petition was constitutionally protected under the First Amendment, and the fact that the petition was successful does not make Barden the effective decision maker.

CCI, on the other hand, asserts that the City did not engage in effective decision making because: (1) the testimony by Councilman Ravitz merely establishes that the City gave in to Barden's demands for modifications because the City felt it had no other choice after Barden had manipulated deadlines for over a year; and (2) Ravitz testified that to this day the City Council does not even know who owns the Detroit cable franchise. Moreover, plaintiff asserts that DCCC, upon whom the City Council relied for conveyance of information, repeatedly failed to obtain relevant information, and repeatedly withheld from the Council material that it did obtain. Plaintiff CCI contends that Barden manipulated the process in order to obtain valuable concessions from the City, which eviscerated their proposal for the provision of cable services. CCI also asserts most strongly that a clear factual issue exists as to who the effective decision maker was that should require denial of the motion for summary judgment and a trial on the merits.

CCI cites the following "facts" in support of the absence of effective decision making on the part of the City:

1. The Cable Commission's failure to consider Barden's cable franchise difficulties in Toledo and Royal Oak.

2. The Cable Commission's failure to provide its financing consultant with crucial information about Barden's financial difficulties in Toledo, or about CCI's prior cable track record and financial backing.

3. The Cable Commission's and the Council's failure to consider alternatives to the award of a single franchise.

4. The Cable Commission's acquiescence in Barden's year-long delay in negotiating the franchise agreement while apparently awaiting the passage of the Cable Communications Policy Act of 1984.

5. The Cable Commission's use of the Cable Communications Policy Act of 1984 as a pretext for not terminating the Barden franchise.

6. The Cable Commission's refusal to meet with City Council to discuss the status of negotiations with Barden.

7. The Cable Commission's and the City's repeated acquiescence in Barden's demands to eliminate from its proposal the key features which resulted in the award of the franchise to it.

8. The Cable Commission's and City's failure to ask CCI if it would fulfill its franchise proposal or the Barden franchise proposal, after Barden refused to honor its own proposal.

9. The City Council's sense that it was forced to accede to Barden's modification demands because of the delay that had taken place.

10. The Cable Commission's failure to even inquire into whether Barden's claim that its proposal was commercially impractical was accurate.

11. The Cable Commission's assurances to the Council that MacLean–Hunter would not gain management or ownership control of the franchise, and the Council's unawareness that that is precisely what has occurred.

914

Once it is determined that a municipality is entitled to immunity from the antitrust laws, the private parties who are regulated by the municipality are also entitled to immunity as long as the effective "decision maker" is the municipality rather than the private parties. The precise question was framed by this Court in *City Communications v. City of Detroit,* 660 F.Supp. 932 (E.D.Mich.1987): "Were the City of Detroit's decisions that permitted the defendants to retain their exclusive cable television franchise made by the City, or did Barden and MacLean have so much influence that the decisions were effectively those of the private defendants?" *Id.* at 935.[2]

To avoid summary judgment on this effective decision-maker issue, plaintiff must make a sufficient showing of a factual question of either corruption by Barden on the City's decision-making process or of delegation by the City of Detroit of the decision-making function to Barden and MacLean-Hunter.

The plaintiff has already conceded that there was no corruption in the franchise process in its answer to an interrogatory on March 4, 1988, when it said that "Plaintiff does not contend that Barden or MacLean-Hunter engaged in kickbacks or bribes or anything of that nature."

Therefore, in order for plaintiff to defeat defendant's motion for summary judgment, plaintiff needs to show that a sufficient factual issue exists of delegation by the City to Barden and MacLean-Hunter.

In determining whether an agreement or conspiracy existed for the purposes of the antitrust law, an antitrust plaintiff "must present evidence 'that tends to exclude the possibility' that the alleged conspirators acted independently." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 589, 106 S.Ct. 1348, 1357, 89 L.Ed.2d 538 (1986) (quoting *Monsanto Co. v. Spray-Rite Service Corp.,* 465 U.S. 752, 764, 104 S.Ct. 1464, 1470, 79 L.Ed.2d 775 (1984)). The Court

pointed out that "conduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy." 475 U.S. at 597 n. 21, 106 S.Ct. at 1362 n. 21. Therefore, to avoid summary judgment, CCI must present evidence which, if true, would exclude the possibility that Detroit acted independently.

It appears to the Court, after extensive discovery, that plaintiff has presented evidence that suggests that, at most, the City acted unwisely, and that its decision-making process was ineffective for reaching the best result.

CCI contends that MacLean-Hunter and Barden have manipulated the established cable television franchise procedures by improperly utilizing extensions of deadlines, amendments to the Request for Proposals (RFP), and the Detroit Code. The manipulation, CCI contends, has resulted in the City permitting Barden to overhaul its original proposal. It further claims that the Cable Commission, in turn, repeatedly failed to uncover relevant information, failed to consider relevant information that was found, and repeatedly acquiesced in Barden's demands for modification. It also claims that the City Council merely acquiesced in this course of events because it felt it had no choice. It says, therefore, under such circumstances, a jury could readily infer that Barden and MacLean-Hunter, and not the City, were the effective decision makers in the award of the Detroit cable television franchise.

Essentially, CCI asserts that the City's decision making was so deficient and ineffective that a fact finder could conclude that there was an "abdication of responsibility" to Barden and MacLean-Hunter, and, therefore, they became the effective decision makers.

The most recent Sixth Circuit opinion on this matter is *Riverview Investments Inc. v. Ottawa Community Improvement Corp.,* 769 F.2d 324, *modified,* 774 F.2d

---

**2.** As the Court pointed out in an earlier opinion, the *Noerr-Pennington* doctrine protects private parties who lobby governments for their own benefit from the antitrust laws. *See* 660 F.Supp. at 935 n. 2.

162 (6th Cir.1985). In *Riverview,* the Sixth Circuit was concerned with who made the effective decision to reject a developer's bond application, the village or the private party. The court recognized a two-pronged test for determining when a private defendant's conduct is eligible for "state action" exemption. The first prong requires that the anticompetitive behavior derive from a clearly articulated state policy; the second prong requires active supervision of the anticompetitive behavior, but only when the actor is a private party rather than a municipality. 769 F.2d at 329 (citing *Town of Hallie v. City of Eau Claire,* 471 U.S. 34, 105 S.Ct. 1713, 85 L.Ed.2d 24 (1985)); *Southern Motor Carrier Rate Conference, Inc. v. United States,* 471 U.S. 48, 105 S.Ct. 1721, 85 L.Ed.2d 36 (1985).

Because the private party involved was authorized to approve the issuance by the village of industrial revenue bonds, the court held that the first prong was satisfied. However, the court was troubled with the second prong. The *Riverview* court remanded the case to determine (1) if the village or the private party made the "effective decision," and (2) if the private party made the "effective decision," was it actively supervised by the state. 769 F.2d at 330; 774 F.2d at 163.

While the *Riverview* court did not explicitly state that, in making the determination of who made the "effective decision," the trial court should look to the "overall influence" of the private party on the decision-making process, this direction is necessarily implied. Only upon a determination that the private party made the effective decision could evidence be taken as to whether the private party was actively supervised by the state. 769 F.2d at 330; 774 F.2d at 163. Because the court already recognized that the private party had been granted some authority in the decision-making process, and still noted the existence of a factual "effective decision maker" issue, this necessarily suggests that the trial court should look to facts as other than merely a direct grant of authority such as overall influence.

■ It is clear here that there is no direct grant of authority to Barden to be part of the decision-making process, and the Court concludes that there has not been such overall influence by Barden and MacLean–Hunter to make them the effective decision makers. The plaintiff only submits evidence of deficiencies in the City's decision-making process. There is not a single action alleged or brought out in discovery that shows that Barden either directly or indirectly made a decision, or controlled the decision-making process of the City. Basically, all that the facts presented by plaintiff show, assuming them all to be true, is that Barden made requests, and the City made decisions on those requests, that ultimately were favorable to Barden. The City may have acted unwisely, and its decision-making process may have been ineffective in reaching the best result. However, this does not indicate that Barden was the effective decision maker.

*Vartan v. Harristown Development Corporation,* 661 F.Supp. 596 (M.D.Pa. 1987), *aff'd,* 838 F.2d 1208 (3d Cir.1988), does not prevent summary judgment for defendant. In *Vartan,* the court merely suggested that affidavits that implied that the municipality's approval was coerced may have been important in deciding who was the effective decision maker, if the affidavits were timely. Assuming they were timely, and the court found the private party to be the effective decision maker, *Vartan* can still be distinguished because there the private party had been granted a certain amount of formal decision-making power.

Here, Barden had not been granted any decision-making power. Moreover, no evidence exists in this record that the City was coerced into approving the request made by Barden. At most, the Council members who voted in favor of the modifications did so in order to avoid starting the franchising process all over again.

■ Antitrust conspiracy claims cannot be supported by ambiguous evidence even when there is an economic motive for the alleged conspiracy. In *Huron Valley Hospital, Inc. v. City of Pontiac,* 650 F.Supp.

1325, 1334 (E.D.Mich.1986) (discussing *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984); *First National Bank of Arizona v. City Service Co.*, 391 U.S. 253, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968); and *Smith v. Northern Michigan Hospitals, Inc.*, 703 F.2d 942 (6th Cir. 1983)), this Court observed:

> The [Supreme] Court [in *Matsushita v. Zenith*] also noted that, even where there is a plausible motive to conspire, its prior decision in *Monsanto* ... "establishes that conduct that is as consistent with permissible competition as with illegal conspiracy does not, without more, support even an inference of conspiracy." ... More expansively, the Court stated:
>
>> But antitrust law limits the range of permissible inferences from ambiguous evidence in § 1 cases.... To survive a motion for summary judgment or for a directed verdict, a plaintiff seeking damages for a violation of § 1 must present evidence "that tends to exclude the possibility" that the alleged conspirators acted independently.

*Id.* at 1334 (citations omitted).

The evidence presented here does not tend to exclude the possibility that the alleged conspirators acted independently. Many of the facts are inconsistent with the existence of a conspiracy. The Commission's Report and Recommendation Concerning Modifications provides a plausible explanation for the City's decision, other than a conspiracy with Barden. Further, it is clear that various independent consultants were hired to evaluate the proposals and the requests for modification. Moreover, the grant of the franchise was conditional, and the Commission originally recommended that the franchise given to Barden be terminated. In addition, the Commission considered the Cable Act's effect on any franchisee's ability to obtain modifications and the impact of the Act on a new franchising process. The City Council made repeated demands for information, and the holding of public hearings on Barden's requests for modifications. As pointed out before, plaintiff has admitted that there were no bribes, kickbacks, or anything of that nature, and plaintiff has failed to submit any evidence of any motive for a public official to conspire with Barden.

In addition, the presumption underlying the state action doctrine is that governmental bodies act in the public interest rather than to promote private interests. *Town of Hallie v. City of Eau Claire*, 471 U.S. 34, 45, 105 S.Ct. 1713, 1719, 85 L.Ed.2d 24 (1985). Moreover, *Matsushita*, holds that, if the factual context makes the claim of conspiracy implausible, the plaintiffs must come forward with more evidence to support their claim than would otherwise be necessary. 475 U.S. at 587, 106 S.Ct. at 1356, 89 L.Ed.2d at 552. Assuming this heightened standard applies, plaintiff's evidence does not come close to meeting it. Also, this Court has already held that the *Noerr–Pennington* doctrine should apply to Barden's lobbying activities. *See* 660 F.Supp. at 935 n. 2.

Finally, the fact that the cable franchise may not have been awarded in strict compliance with City regulations "will not be determinative of this issue. The Sherman Act cannot be used to enforce state or local regulations that can be enforced in state court." 660 F.Supp. at 935 n. 3.

It therefore appears clear to the Court that there is no evidence before this Court to require a jury trial on factual issues because no factual issues that would justify the finding that Barden was the effective decision-maker have been identified or presented by the plaintiffs.

For these reasons, defendants' motion for summary judgment will be granted. An order may be presented.