875 F.2d 865
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
MICHIGAN ENVIRONMENTAL RESOURCES ASSOCIATES, INC., a
Michigan Corporation, Plaintiff-Appellant,
v.
COUNTY OF MACOMB, a municipal corporation; Patrick J.
Johnson; Richard Sabaugh; Sam Petitto; Walter Dilber,
Jr.; John Joseph Buccellato; Diana Kolakowski; Anne
Lilla; Terrance Almquist; Frank Anthonis; Ken Simmons;
Walter Franchuk; Mary Louise Daner; Stanley Bean; William
Ballor; Gerald M. McCaffrey; Harold E. Grove; Elizabeth
Slinde; and Hubert Vander Putten, Defendants-Appellees.
 No. 87-2029.
 United States Court of Appeals, Sixth Circuit.
 May 23, 1989.
 
 Before NATHANIEL R. JONES and ALAN E. NORRIS, Circuit Judges, and BAILEY BROWN, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Michigan Environmental Resources Associates, Inc. (MERA), in appealing from the district court's grant of summary judgment to defendant County of Macomb, contends that the district court erred in concluding that MERA did not have a property interest in a favorable determination by the county that its application for a permit to construct a landfill on its land complied with the county's solid waste management plan. MERA's complaint charged that the county's arbitrary and capricious conduct, in denying approval, violated 42 U.S.C. Sec. 1983 by depriving it of a property interest without the procedural and substantive due process of law secured by the Constitution.
 
 
 2
 In determining whether the county deprived plaintiff of a federally protected right, the district court noted that the Due Process Clause may be said to protect persons from the deprivation of certain substantial rights in the absence of constitutionally adequate procedures (procedural due process), and from certain types of reprehensible government conduct regardless of the fairness of the procedures followed (substantive due process). The court went on to point out, however, that MERA was in no position to claim the protection of the Due Process Clause since it had failed to demonstrate that it had a constitutionally protected property interest.
 
 BACKGROUND
 
 3
 In 1978, Michigan's legislature adopted that state's Solid Waste Management Act, in an effort to provide comprehensive regulation of solid waste disposal within the state. Mich.Comp.Laws Ann. Secs. 299.401-.436. The Act requires each county to develop a solid waste management plan acceptable to the state's Department of Natural Resources. In 1984, the Department approved Macomb County's plan, which included detailed procedures for approving sanitary landfill sites. MERA's request, for approval of its property as a landfill site, was evaluated under the plan.
 
 
 4
 According to the plan, an application is first reviewed by a Technical Review Committee, which is charged with evaluating and scoring proposed sites in accordance with criteria and objectives set out in the plan. The Technical Review Committee forwards its comments to a Solid Waste Planning Committee, a body having a broad-based membership representative of local government, the solid waste management industry, environmental interest groups, and the general public. The Solid Waste Planning Committee determines if the Technical Review Committee correctly applied the plan's criteria and notifies the county's Board of Commissioners whether it believes a proposed site complies with the plan. The Board then approves or rejects the site based upon the information it has received through the process.
 
 
 5
 Here, the Technical Review Committee accorded MERA's site a score in excess of the minimum called for by the plan, and the Solid Waste Planning Committee recommended construction of a landfill on the site. Following a public hearing where considerable public opposition was voiced, the Board unanimously rejected the proposal as not complying "with the criteria required by the plan."
 
 
 6
 In its complaint, MERA contended that the Board's action was arbitrary and capricious since it was inconsistent with the plan, which left the Board without discretion to reject the application, given the work product of the Technical Review Committee and the Solid Waste Planning Committee. Accordingly, MERA argued, it had acquired a property interest subject to due process protection. The district court, on the other hand, concluded that MERA had no constitutionally protected property interest as the result of the county plan having created an "entitlement," since the plan did not mandate the Board's approval of MERA's proposal. Instead, because the Board had the discretion to approve or reject the proposal, MERA had nothing more than a unilateral expectation that its application would be approved.
 
 DISCUSSION
 
 7
 As noted by the district court, an action for deprivation of property brought under 42 U.S.C. Sec. 1983 can be predicated upon the Due Process Clause only where the asserted property interest is a constitutionally recognized one. This is the case whether the plaintiff relies upon procedural due process, Mathews v. Eldridge, 424 U.S. 319, 332 (1976); Board of Regents v. Roth, 408 U.S. 564, 569-70 (1972); Riverview Inv., Inc. v. Ottawa Community Improvement Corp., 769 F.2d 324, 327 (6th Cir.), reh'g denied and opinion supplemented, 774 F.2d 162 (6th Cir.1985), or substantive due process, Stevens v. Hunt, 646 F.2d 1168, 1169-70 (6th Cir.1981). Accordingly, if MERA did not acquire a constitutionally protected property interest as the result of the filing and consideration of its application for a permit to construct a landfill on its land, we need not decide whether it received due process.
 
 
 8
 In determining whether a plaintiff has a constitutionally protected property interest in a government benefit such as the permit at issue here, courts will look to see if state law or local ordinances have created for the plaintiff an entitlement to the benefit, or whether, instead, he has simply comprehended from the law a unilateral expectation that he may enjoy the benefit.
 
 
 9
 To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it. It is a purpose of the ancient institution of property to protect those claims upon which people rely in their daily lives, reliance that must not be arbitrarily undermined.
 
 
 10
 Roth, 408 U.S. at 577.
 
 
 11
 Under the circumstances presented by this case, MERA will have a legitimate claim of entitlement to the benefit which is within the power of the Board to grant, only if the plan requires the Board to grant his application; in other words, if the discretion of the Board is so limited by the criteria and standards found in the plan that it was essentially without the option to deny the application. See, e.g., Olim v. Wakinekona, 461 U.S. 238 (1983); Hewitt v. Helms, 459 U.S. 460 (1983); Riverview Inv., 769 F.2d at 327.
 
 
 12
 MERA points to Littlefield v. City of Afton, 785 F.2d 596 (8th Cir.1986), where applicants for a building permit, who had complied with all requirements contained in city ordinances, were held to have a property interest in the permit and the city was found to be guilty of a substantive due process violation by imposing extralegal conditions for issuance of the permit. On the other hand, the county points to Chiplin Enter., Inc., v. City of Lebanon, 712 F.2d 1524 (1st Cir.1983), where the court held that a real estate developer, who alleged that the city refused to issue a building permit even though its reasonable requirements had been met, was not deprived of any constitutional right by the mere bad-faith refusal of the city to follow state law since state courts were available to correct the error. Although the authority of Littlefield is questionable, in view of the more recent opinion of the Eighth Circuit Court of Appeals, sitting en banc, in Lemke v. Cass County, 846 F.2d 469 (8th Cir.1987), we need not select between the approaches respresented by these cases since the Littlefield opinion is of little assistance to MERA because, even under the holding of that case, MERA could not prevail here. In that case, the municipality was without discretion to deny the building permit since, under the city code, the permit would routinely issue upon compliance with set-out conditions. Here, by contrast, the Board had discretion to deny the application.
 
 
 13
 MERA argues that under the plan the Board is required to approve a site if the Solid Waste Planning Committee decides it complies with the plan, and to reject the site if the Solid Waste Planning Committee decides it does not. For the most part, the plan is drafted informally, in a most conversational language, and talks in the future tense about the order in which actions will be taken, without any consciousness of substantive property rights.
 
 
 14
 We are unable to say the Board was wrong in assuming that, after its subordinate committee reported, the county's legislation and regulations, and applicable Michigan statutes and regulations, would apply both with respect to its consideration of the proposal and to the rights of the public. The plan contains no hint that the traditional role of citizens in voicing their opinions and influencing the decisions of elected officials was to be limited during the reviewing process. And, the minutes reveal that the Board rigidly adhered to the plan's requirement that it decide whether the proposal was consistent with the plan.
 
 
 15
 Under the plan, only the Board has the power to accept or reject a site. In arriving at its decision, it must consider the information gathered on its behalf and must base its decision upon that information. However, the plan does not prohibit the Board from independently evaluating the information, or the public from questioning its adequacy or accuracy. The plan does not require the Board to make a mechanical quantitative evaluation of the site, uninfluenced by its qualitative judgment.
 
 
 16
 Nothing in the language of the Act or plan provides any basis for believing that either the state or the Board intended the Solid Waste Planning Committee's decision to be the final expression of the people's will, or that the Board should be a mere conduit for mailing that committee's decision to the Department of Natural Resources. The Committee had the duty to inform the Board of its decision that a proposal did or did not conform to the plan; however, there is no indication that it had the final authority to reject or approve a proposal, or that the Board was bound by its decision.
 
 
 17
 Accordingly, we agree with the district court that the plan leaves substantial discretion with the Board in the granting or withholding of the benefit sought by MERA. While the plan establishes a numerical evaluation system for assessing whether a site conforms, the legal effect of the assessment is only to point out that a site is acceptable for consideration. Nothing in the plan establishes a point at which a determination is required that a proposal must be accepted. The plan is voluminous, and requires discretionary value judgments, rather than specific fact determinations, with respect to many of its details.
 
 
 18
 It also contemplates that proposed sites are to be compared--a clear indication that mere attainment of a passing score was not intended to be sufficient to entitle a proposal to the Board's approval. Furthermore, the plan uses words of discretion, such as "judge" and "consider," to describe the Board's role in determining whether to approve or reject a proposal.
 
 
 19
 The plan affords a disappointed sponsor an opportunity to modify a proposal and have the site reevaluated. MERA chose not to exercise that opportunity. Even if it had, nothing in the plan indicates that the Board was bound to approve a modification.
 
 
 20
 For the reasons stated above, MERA has failed to establish a constitutionally protected property interest sufficient to invoke the protections of the Due Process Clause. Accordingly, the judgment of the district court is affirmed.