**BUILDING INDUSTRY FUND et al., Plaintiffs,**

v.

**LOCAL UNION NO. 3, INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL—CIO et al., Defendants.**

**No. 93 CV 2721.**

United States District Court, E.D. New York.

Feb. 8, 1996.

Opinion on Reconsideration
May 8, 1996.

---

Pollack & Greene by Alan M. Pollack, Mitchell G. Mandell, Stuart Parker, Scott Sommer, Renee Schimkat, New York City, Phillips, Nizer, Benjamin, Krim & Ballon by James Frank, Mark R. Weiss, Joshua Adler, New York City, for Plaintiffs.

Norman Rothfeld, New York City, for Defendant, Local Union 3, Intern. Broth. of Elec. Workers, AFL-CIO.

Menagh, Trainor, Mundo & Falcone, P.C. by Douglas Menagh, Vito V. Mundo, New York City, for Defendant Joint Industry Bd.

Murtagh, Cohen & Byrne by Edward T. Byrne, Garden City, NY, for Defendant NYECA.

Taubenblatt & Mopper by Leonard Taubenblatt, New York City, for Defendant AECI.

## OPINION AND ORDER

ROSS, District Judge.

This rather complex case represents another unfortunate chapter in a long history of labor discord in the electrical segment of the construction industry in New York City. Plaintiffs in this action, a number of individual corporations engaged in the business of providing electrical contracting services and materials in the New York metropolitan area, and the Building Industry Fund, alleged to be an unincorporated trade association of over one hundred such contractors, have filed a civil suit under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1962(a), (c) and (d) (hereinafter "RICO"); the Sherman Anti-Trust Act, 15 U.S.C. §§ 1 and 2 (hereinafter "Sherman Act"); the Labor Management Relations Act, 29 U.S.C. § 187 (hereinafter "LMRA"); and state tort law. Defendants named in the Second Amended Complaint include four entities: Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL—CIO; the Joint Industry Board of the Electrical Industry; the Association of Electrical Contractors, Inc.; and the New York Electrical Contractors Association. Plaintiffs allege that defendants have engaged in a twenty-year campaign of threats, violence and extortion, amounting to a pattern of racketeering activity, a conspiracy to restrain trade in and monopolize the New York electrical services market, and a systematic program of unfair labor practices. Presently pending before the court, after months of voluminous expedited discovery, are motions for summary judgment on all counts by each of the four defendants. For the reasons that follow, the motions are granted in part and denied in part.

### FACTUAL BACKGROUND

The New York Electrical Contractors Association, Inc. and the Association of Electrical Contractors, Inc. (hereinafter "NYECA" and "AECI" respectively, or jointly "the Associations") are trade organizations which, together, represent approximately two hundred individual companies, each engaged in providing electrical services in the New York metropolitan region. In the construction industry, project contracts are typically awarded to general contractors, who then subcontract specific parts of the job to smaller trade contractors which perform such specialized services as electrical, plumbing, and dry wall installation. The Associations act as multi-employer bargaining units, and have

for many years been bound by a series of collective bargaining agreements with Local Union No. 3, International Brotherhood of Electrical Workers, AFL—CIO (hereinafter "Local 3"), which represents the electrician employees of between four and five hundred electrical contractors (hereinafter "Local 3 contractors").

In the collective bargaining agreement of January 1, 1943, the contractors and Local 3 established an entity to be known as the Joint Industry Board of the Electrical Industry (hereinafter "JIB"), whose stated purpose at the time was, among other things, to negotiate collective bargaining agreements, arbitrate disputes between employees and employers, and operate pension plans. JIB Ex. B, at 7 ("History and Organization of JIB"). Today, the stated purposes include administering qualified employee benefit plans, instituting initiatives for the betterment of the electrical industry, and promoting harmony between management and labor by deciding controversies, problems or disputes arising under the collective bargaining agreement. Schuck Aff., ¶ 8; JIB, Ex. C and Pl.'s Ex. 5 (Rules and Regulations of JIB). JIB is composed of thirty representatives: fifteen chosen by Local 3, ten chosen by NYECA, four chosen by AECI, and one by independent contractors affiliated with Local 3.[1] The Local 3 contractors contribute funds for the operation of JIB, and the Associations guarantee those funds with respect to its members.

Sometime in the early 1970's, Local 363 of the International Brotherhood of Teamsters (hereinafter "Local 363") also began organizing electricians. Labor strife between Local 363 and Local 3 ensued, which at one point was described in the media as a "violent war over the right to represent electrical workers," including "bombings, arson, sabotage of work sites, beatings, and death threats." Michael Oreskes, *Corruption is Called a Way of Life in New York Construction Industry,* N.Y. Times, Apr. 25, 1982, § 1, at 1. Ultimately, Local 363 entered a collective bargaining agreement with another multi-employer trade association known as the United Construction Contractors Association (hereinafter "Contractors Association"). Throughout this period, however, Local 363 apparently remained the minority representative of electrical workers in New York City.

The collective bargaining agreement between Local 363 and the Contractors Association provided for the creation of a fund to be called the Building Industry Fund (hereinafter "Fund"), to which each employer was obligated to contribute. JIB Ex. AT, art. 35 (Collective Bargaining Agreement between Local 363 and Contractors Association). The Fund was established to promote the business, welfare and interests of the electrical industry, support various training and educational programs, and stabilize and improve employer-union relations. It was to be administered by employer-appointed trustees, who were to meet with the union every three months.

On October 18, 1989, the National Labor Relations Board (hereinafter "NLRB") held a representation election among various classes of electrical workers in the employ of the individual Contractors Association members, which Local 363, the incumbent union, boycotted. On the eve of election, all but six members of the Contractors Association withdrew from that organization. Local 3 was elected, and on February 23, 1993, the NLRB certified Local 3 as the representative of all Contractors Association electricians. Thereafter, the former Contractors Association contractors refused to bargain with Local 3, and on October 29, 1993, the NLRB entered a cease and desist order,[2] which the Second Circuit later enforced on September 2, 1994.[3] Thus, all former members of the Contractors Association are presently obligated to engage in collective bargaining with defendant Local 3.

---

1. There is also provision for a public representative appointed by the federal district court, although it is unclear whether such a representative exists at the present time.

2. *United Elec. Contractors Ass'n a/k/a United Constr. Contractors Ass'n,* 312 N.L.R.B. 1118, 144 L.R.R.M. 1294, 1993 NLRB LEXIS 1111 (1993).

3. *United Elec. Co. v. N.L.R.B.,* 41 F.3d 1500 (2d Cir.1994).

Plaintiffs include thirteen individual electrical contracting companies (hereinafter "the corporate plaintiffs") who had been bound by the collective bargaining agreement with Local 363. They do not deny that they had also been members of the Contractors Association. The Fund, which now purports to be a trade association representing over one hundred electrical contractors, including the thirteen named plaintiffs, is also named as a plaintiff. Together, on June 18, 1993, they filed the present lawsuit pursuant to the Racketeering Influenced and Corrupt Organizations Act, the Sherman Anti–Trust Act, the Labor Management Relations Act, and state tort law, against Local 3, the Associations, and JIB.

Plaintiffs allege that sometime prior to January 1, 1975, and continuing to the present, all four defendants entered into an unlawful "conspiracy," the purpose of which, through racketeering acts of extortion, was to restrain trade, monopolize the market for electrical contracting in New York City, and drive plaintiffs out of business. Paragraphs 25 through 27 of the Second Amended Complaint (hereinafter "the complaint") allege that members of Local 3 employed arson, threats, vandalism, and other forms of violence and harassment against plaintiffs and other electrical contractors to secure contracts for Local 3 contractors at the expense of Local 363 contractors. They also allege that strikes, sit-ins and secondary boycotts were threatened and carried out. In some cases, the Local 3 members allegedly responsible for these activities are also identified as representatives of JIB. Although the complaint alleges that JIB, AECI, and NYECA were complicit in these activities, it does not detail their involvement, except to allege that all defendants were part of the "conspiracy."

Furthermore, plaintiffs allege that JIB has used the funds it receives from Local 3 contractors to mount a systematic campaign to harass them through litigation and administrative proceedings. Most of these activities have taken the form of "prevailing wage law" suits pursuant to N.Y. Lab. Law § 220. A final allegation does not appear in the complaint, but in plaintiffs' papers on the instant motion. Plaintiffs allege that defendants conspired illegally to fund JIB in violation of 29 U.S.C. § 186, creating a "slush fund" to support its litigation activities.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is appropriate when there exists no genuine issue of material fact in a case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A disputed material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* 477 U.S. at 248. The moving party bears the burden of demonstrating that no material fact is in dispute. *Hurwitz v. Sher*, 982 F.2d 778, 780 (2d Cir.1992) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970)), *cert. denied*, 508 U.S. 912, 113 S.Ct. 2345, 124 L.Ed.2d 255 (1993). In examining the record, the court must resolve all ambiguities against the movant and draw all favorable inferences in favor of the nonmovant. *Adickes*, 398 U.S. at 158–59, 90 S.Ct. at 1609; *Ramseur v. Chase Manhattan Bank,* 865 F.2d 460, 465 (2d Cir.1989). Once the moving party has made the necessary showing, mere allegations or denials by the non-moving party are insufficient to show that there exists a triable issue of fact. *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983). Further, "to defeat a motion for summary judgment a plaintiff cannot rely on 'conjecture or surmise,' *Bryant v. Maffucci*, 923 F.2d 979, 982 (2d Cir.), *cert. denied*, 502 U.S. 849, 112 S.Ct. 152, 116 L.Ed.2d 117 (1991), and 'must do more than simply show that there is some metaphysical doubt as to the material facts,' *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)." *Heilweil v. Mount Sinai Hosp.*, 32 F.3d 718, 723 (2d Cir.1994), *cert. denied*, 513 U.S. 1147, 115 S.Ct. 1095, 130 L.Ed.2d 1063 (1995). The non-moving party must instead "produce 'significant probative evidence tending to support [its position].'" *Id.* (quoting *United States v. Pent–R–Books, Inc.*, 538 F.2d 519, 529 (2d Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977)). "[S]ummary judgment is ordinarily inappro-

priate where an individual's intent and state of mind are implicated." *Ramseur*, 865 F.2d at 465.

## II. *Threshold Determinations Affecting All Counts*

### A. *Standing of the Fund*

■ The Fund purports to be a trade association of electrical contractors, the purpose of which is "to promote and improve the lawful and legitimate business, welfare and interests of the electrical/construction industry." Second Am. Compl., ¶ 1. Neither the defendant Associations nor JIB contest The Fund's standing as a plaintiff in this suit. JIB, in fact, agrees that the Fund is an unincorporated trade association of over 100 electrical contractors, of which each corporate plaintiff is a member. JIB Rule 3(g) Statement, ¶¶ 2–4.[4] As a trade association, the Fund would have standing to sue on behalf of all of its members if it met the following three-prong standard established by the Supreme Court:

> Thus we have recognized that an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

*Hunt v. Washington Apple Advertising Comm'n*, 432 U.S. 333, 343, 97 S.Ct. 2434, 53 L.Ed.2d 383 (1977); *see also Self–Insurance Institute v. Korioth*, 993 F.2d 479, 484 (5th Cir.1993); *National Coal Ass'n v. Lujan*, 979 F.2d 1548, 1551 (D.C.Cir.1992); *National Ass'n. of Pharmaceutical Mfrs. v. Ayerst Lab.*, 850 F.2d 904, 914 (2d Cir.1988); *American Booksellers Ass'n. Inc. v. Houghton Mifflin Co.*, No. 94 Civ. 8566, 1995 WL 92270, at *3, 1995 U.S. Dist. LEXIS 2522, at *9–10, 1995–1 Trade Cas. (CCH) ¶ 70,931 (S.D.N.Y. March 3, 1995).

Local 3, on the other hand, argues that the Fund lacks standing to bring this suit as a separate and individual plaintiff because it is not a representational, membership organization or a trade association, and further, has not alleged any direct injury to itself as required by *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 1318, 117 L.Ed.2d 532 (1992); *see also Manson v. Stacescu*, 11 F.3d 1127, 1130 (2d Cir.1993) (stating that RICO standing is limited "to plaintiffs whose injuries were proximately caused by the RICO predicate acts," citing *Holmes* ). Rather, Local 3 claims, the Fund is only a trust fund of employer contributions created by the collective bargaining agreement between Local 363 and the Contractors Association, which should be terminated by virtue of the certification of Local 3 as the union with which the corporate plaintiffs must negotiate. Because plaintiff has not responded to the alleged lack of standing, Local 3 argues that it must be deemed uncontested that the Fund is a trust fund which lacks standing to sue for damages suffered by the contractors from whom it receives its contributions. Local 3 Reply Mem., at 4. If Local 3 had asserted in its Rule 3(g) Statement as an undisputed fact that the Fund is merely a trust fund that lacks standing in this case, and supported that assertion by evidence of record, and if the plaintiffs had still not responded, then the lack of standing would have been deemed admitted. *General Electric v. New York State Dep't of Labor*, 936 F.2d 1448, 1452 (2d Cir.1991). However, Local 3 raised the issue only in its memorandum of law.

■ Standing should ordinarily not be presumed, and the burden rests upon the plaintiff to demonstrate standing. *AutoInfo, Inc. v. Hollander Publishing Co.*, No. 90 Civ. 6994, 1991 WL 155765, 1991 U.S. Dist. LEXIS 11019, at *2, 1991–92 Trade Cas. (CCH) ¶ 69, 529 (August 7, 1991) (dismissing RICO and Sherman Act claims for failure to establish standing) (citing *Simon v. Eastern Ky. Welfare Rights Org.*, 426 U.S. 26, 45, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976) and Association of *Data Processing Serv. v. Camp*, 397 U.S.

---

4. The JIB does point out that the Fund does not claim to be an ERISA fund, and questions why Local 363 is not a party in this suit if the Fund is

a "creature of the collective bargaining agreements executed between Local 363 and its affiliated contractors." JIB Mem. of Law, at 4 n. 4.

150, 153, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970)). In the case at bar, plaintiffs have made no independent attempt to establish the Fund's standing, despite Local 3's raising the issue, leaving the court to scour the record itself for evidence.[5]

The collective bargaining agreement between Local 363 and the Contractors Association that was in force from July 1, 1986 through July 30, 1989, clearly indicates that the Fund is simply one of several funds to which the members of the Contractors Association agreed to contribute. JIB Ex. AT, at 35. Interestingly, the fund was established to promote the business, welfare and interests of the electrical industry, support various training and educational programs, and "stabilize and improve employer-union relations," goals similar to those articulated by defendants in establishing JIB and questioned by plaintiffs in this suit. *See, e.g.,* Schuck Decl., ¶ 8; JIB Ex. B, at 5. Although Anthony Cardillo claims to be the present "chairman" of the Fund, Cardillo Aff., ¶ 1, the agreement refers only to trustees chosen by the employers who shall administer the fund and meet with union officials once every three months. The agreement does not suggest that the individual contractors are "members" of the Fund, or that there are employer "representatives" sitting on a Board of Directors, but only that each employer is obligated to make financial contributions to the fund. Indeed, because the Contractors Association was the representative trade association and multi-employer bargaining unit at the time the agreement was negotiated, *see* JIB Ex. AT, at 1, the Fund would have been redundant in such a role.

The Contractors Association itself apparently became largely defunct when all but six of its members withdrew from the organization just prior to the certification election in

November, 1989. If the Fund filled this void by becoming an actual trade association and multi-employer bargaining representative for the Local 363 contractors at that time, plaintiffs have provided no evidence to that effect. Therefore, based upon the present record, the court finds that the Fund is not a representative trade association to which the standing requirements of *Hunt* could be applied, but is rather a fund of finances to be used for certain stated purposes. Because plaintiffs have offered no evidence that contributions to the fund suffered at any point as a result of any of the activities alleged in the Second Amended Complaint, the fund itself is not properly a plaintiff in this action. Further, even were the court to find that the Fund is a trade association, the record is devoid of evidence which would enable it to hold that the Fund meets all three elements of the *Hunt* standard. For these reasons, the Fund is dismissed as a plaintiff in this action for lack of standing to sue.

### B. *Hearsay in Plaintiffs' Affidavit*

■ JIB argues that much of the evidence upon which plaintiffs rely in resisting summary judgment is inadmissible hearsay that must be discounted by the court. Plaintiffs counter that "the court may consider hearsay evidence in opposition to a motion for summary judgment." Pl.'s Mem. of Law, at 16. Plaintiffs' argument, however, fails fully to take account of JIB's argument and the applicable law.

Plaintiffs have submitted twenty affidavits in opposition to the motions for summary judgment allegedly based upon personal knowledge of various illegal acts by defendants Local 3 and JIB. Many of the statements made by the affiants, however, involve what someone told them about Local 3's conduct, or what someone told someone else regarding why certain electrical contracts were lost.[6] Such statements are classic ex-

---

5. That the other defendants apparently do not contest the Fund's standing does not absolve plaintiffs from their duty to respond to the argument made by Local 3. Moreover, standing is an Article III "case or controversy" limitation to subject matter jurisdiction, *Simon v. Eastern Ky. Welfare Rights Org.,* 426 U.S. 26, 37, 96 S.Ct. 1917, 48 L.Ed.2d 450 (1976), which may therefore be raised by the court *sua sponte. United*

*Food Local 919 v. CenterMark Properties,* 30 F.3d 298, 301 (2d Cir.1994); *Soucie v. County of Monroe,* 736 F.Supp. 33, 35 (W.D.N.Y.1990) (citing *Bender v. Williamsport Area Sch. Dist.,* 475 U.S. 534, 540–42, 106 S.Ct. 1326, 1330–32, 89 L.Ed.2d 501 (1986), *reh'g denied,* 476 U.S. 1132, 106 S.Ct. 2003, 90 L.Ed.2d 682 (1986)).

6. *See, e.g,* Cardillo Aff., ¶¶ 15, 16, 18; Cunardi Aff., ¶¶ 9, 13; Dello Russo Aff., ¶¶ 4, 6, 8; Du-

amples of hearsay: out of court statements made by someone other than the witness offered for the truth of the matter asserted. Fed.R.Evid. 801(c).[7]

■ In opposing summary judgment, "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed.R.Civ.P. 56(e). Thus, while a party opposing summary judgment generally need not prove its evidence in admissible form, *e.g., Gache v. Town of Harrison*, 813 F.Supp. 1037, 1052 (S.D.N.Y.1993), it is equally well-settled that an affidavit that is solely based upon hearsay is a nullity in reviewing a summary judgment motion. *Burlington Coat Factory Warehouse v. Esprit De Corp.*, 769 F.2d 919, 924 (2d Cir. 1985); *Schwimmer v. Sony Corp. of America*, 637 F.2d 41, 45 (2d Cir.1980). Those portions of an affidavit that constitute hearsay may be ignored while other portions supported by admissible evidence may be considered. *See Witter v. Abell–Howe Co.*, 765 F.Supp. 1144, 1147 (W.D.N.Y.1991); *First City Fed. Sav. Bank v. Bhogaonker*, 684 F.Supp. 793, 798 (S.D.N.Y.1988). The party offering the hearsay affidavit must make "a showing that admissible evidence will be available at trial." *Burlington Coat Factory*, 769 F.2d at 924; *Spence v. Maryland Casualty Co.*, 803 F.Supp. 649, 664 (W.D.N.Y.1992); *Isaacs v. Mid America Body & Equip. Co.*, 720 F.Supp. 255, 256 (E.D.N.Y.1989) ("The test is whether the affiant's statements 'would be admissible in evidence under any rule of evidence or exception thereto, if the affiant was on the stand testifying.' ") (quoting 6 J. Moore Federal Practice, ¶ 56.22[1] at 56–752 to 56–755 (2d ed.1988)).

Plaintiffs do not deny that many of the statements in the twenty affidavits are hearsay. Instead, plaintiffs argue that their hearsay evidence may be considered because there exists other evidence that is not hearsay, and that they have not relied solely upon hearsay evidence. The import of the cases, however, is that plaintiffs bear the burden of showing not just that unspecified "other" admissible evidence exists to support their claims, but that the very same statements currently presented in hearsay form either meet a hearsay exception or will be presented in admissible form at trial. Plaintiffs have not made such a showing.

Plaintiffs rely primarily on two cases for their argument that hearsay evidence may be considered in a motion for summary judgment: *United States v. Private Sanitation Indus. Ass'n*, 862 F.Supp. 861, 866–67 (E.D.N.Y.1994) and *Amendolare v. Schenkers Int'l Forwarders, Inc.*, 747 F.Supp. 162, 165–66 (E.D.N.Y.1990). Both of these cases are distinguishable from the case at bar. First, neither case involved the admissibility of affidavits submitted in opposition to a motion for summary judgment. The evidence at issue in *Private Sanitation* was a memorandum prepared by a law firm. The evidence at issue in *Amendolare* was deposition testimony. Thus, neither case addressed the specific requirements of Rule 56(e). Second, the court in *Amendolare* made a specific finding that the deposition testimony at issue would be admissible under Rule 801(d)(2)(E), while the court in *Private Sanitation* concluded that the memorandum in question was at least potentially admissible at trial, and could therefore be considered in reviewing the summary judgment motion. Plaintiffs have not made any showing that the various statements that involve hearsay, and sometimes double hearsay, will be offered in an admissible form at trial, e.g., by calling the declarants to the stand or proving by some other admissible means that certain incidents occurred. Therefore, no statement falling into this hearsay category will be con-

---

ryee, ¶ 3; Ostroff Aff., ¶¶ 3, 6; Rappo Aff., ¶ 6; Reilly Aff., ¶ 4; Siegler Aff., ¶¶ 3, 4.

**7.** Other statements allegedly made by members of Local 3 would be admissible at trial as non-hearsay under Fed.R.Evid. 801(d)(2)(A) as admissions or 801(d)(2)(E) as co-conspirator statements. *See, e.g.,* E. Iovine Aff., ¶ 13; T. Iovine

Aff., ¶ 2; Marone Aff., ¶ 5; Reilly Aff., ¶¶ 3; Zarrelli Aff., ¶¶ 3, 4. The application of this rule to a statement made by an employee of a non-party contractor which in turn is a member of one the defendant Associations is not as clear. *See, e.g.,* Dello Russo Aff., ¶ 5.

sidered in reviewing the present motions for summary judgment.

### III. *Plaintiffs' RICO claims*

 Counts One and Two of the complaint allege violations of RICO. Civil damages under RICO are authorized by 18 U.S.C. § 1964(c), which provides that "[a]ny person injured in his business or property by reason of a violation of section 1962 [of Title 18] may sue therefor in any appropriate court of the United States and recover threefold the damages he sustains and the cost of his suit, including a reasonable attorney's fee." Thus, a private plaintiff who seeks damages under RICO must be able to show a violation of § 1962, as well as injury to business or property caused by such violation. *First Nationwide Bank v. Gelt Funding Corp.*, 27 F.3d 763, 771 (2d Cir.1994), *cert. denied*, 513 U.S. 1079, 115 S.Ct. 728, 130 L.Ed.2d 632 (1995); *Hecht v. Commerce Clearing House*, 897 F.2d 21 (2d Cir.1990). Causation, for the purposes of § 1964, requires a showing of both actual or "but-for" causation and of proximate causation. *Holmes v. Securities Investor Protection Corp.*, 503 U.S. 258, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992) (requiring showing of proximate cause in civil action under § 1962(c)); *see also Long Island Lighting Co. v. General Electric*, 712 F.Supp. 292, 297 (E.D.N.Y.1989) (requiring showing of proximate cause in civil action under § 1962(a)). The RICO violation must be a "substantial factor in the sequence of responsible causation," and a plaintiff's injury must be a reasonably foreseeable consequence. *Hecht*, 897 F.2d at 21.

In this case, plaintiffs have alleged three distinct violations of § 1962. Each of these allegations is addressed below in turn. For the reasons stated, the court finds no issues of material fact which preclude summary judgment for defendants on the RICO claims. The court therefore grants the motion for summary judgment as to Counts One and Two of the complaint.

### A. *§ 1962(a) violation*

 Section 1962(a) of the RICO statute provides, in relevant part, as follows:

It shall be unlawful for any person who has received any income derived, directly or indirectly, from a pattern of racketeering activity or through collection of an unlawful debt in which such person has participated as a principal within the meaning of section 2, title 18, United States Code, to use or invest, directly or indirectly, any part of such income, or the proceeds of such income, in acquisition of any interest in, or the establishment or operation of, any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.

18 U.S.C. § 1962(a). This provision of RICO is primarily directed toward the investment of unlawfully acquired income in legitimate businesses, a practice frequently referred to as "money laundering." *See Brittingham v. Mobil Corp.*, 943 F.2d 297, 303 (3d Cir.1991); *Galerie Furstenberg v. Coffaro*, 697 F.Supp. 1282, 1288 (S.D.N.Y.1988).

At the outset of this analysis, the court notes that the phrase "in which such person has participated as a principal" has consistently been interpreted to apply to both the "pattern of racketeering activity" and the "collection of unlawful debt" clauses of § 1962(a). *See, e.g., Brady v. Dairy Fresh Products Co.*, 974 F.2d 1149, 1152 (9th Cir. 1992); *Genty v. Resolution Trust Corp.*, 937 F.2d 899, 908 (3d Cir.1991); *Haroco, Inc. v. American National Bank and Trust Co.*, 747 F.2d 384, 402 (7th Cir.1984), *aff'd*, 473 U.S. 606, 105 S.Ct. 3291, 87 L.Ed.2d 437 (1985); *United States v. Loften*, 518 F.Supp. 839, 851 n. 19 (S.D.N.Y.1981); *see also* Barry Tarlow, *RICO: The New Darling of the Prosecutor's Nursery*, 49 Fordham L.Rev. 165, 184–85 (1980) (concluding that legislative history of RICO "indicates that the modifying phrase was intended for the purpose of requiring participation as a principal in a pattern of racketeering activity"). The court is not aware of any reported decisions that hold otherwise. Nor do plaintiffs appear to contend that a person who receives income from a pattern of racketeering activity in which he does not participate as a principal can be liable for a violation of § 1962(a). See Pl. Mem. at 80–81.

Furthermore, because the essence of a § 1962(a) claim is the use or investment of racketeering income, the Second Circuit has held that a plaintiff seeking to recover under § 1962(a) must demonstrate injury resulting from the defendant's *investment* of racketeering proceeds, rather than from the underlying racketeering activity. *Ouaknine v. MacFarlane,* 897 F.2d 75, 83 (2d Cir.1990). This rule has also been adopted by the Third, Sixth, Tenth, and District of Columbia Circuits, as well as several district courts in other circuits. *See Danielsen v. Burnside–Ott Aviation Training Center,* 941 F.2d 1220, 1229–30 (D.C.Cir.1991); *Craighead v. E.F. Hutton & Co.,* 899 F.2d 485, 494–95 (6th Cir.1990); *Rose v. Bartle,* 871 F.2d 331, 356–58 (3d Cir.1989); *Grider v. Texas Oil and Gas Corp.,* 868 F.2d 1147, 1149–51 (10th Cir. 1989), *cert. denied,* 493 U.S. 820, 110 S.Ct. 76, 107 L.Ed.2d 43 (1989). The Fourth Circuit and a minority of federal district courts follow a different rule, holding that plaintiff need show only injury caused by the racketeering activity itself. *Busby v. Crown Supply,* 896 F.2d 833, 836–840 (4th Cir.1990). This court, however, is bound by the Second Circuit's decision in *Ouaknine.*

■ Thus, in order to prevail in a RICO action based on § 1962(a), plaintiffs must show that (1) each defendant received income from a pattern of racketeering activity in which it participated as a principal, (2) it invested such income in an enterprise engaged in interstate or foreign commerce, and (3) such investment actually and proximately caused the plaintiffs injury. Courts are split as to whether the defendant—the "person" in the language of the RICO statute—must be distinct from the "enterprise." *Compare Long Island Lighting Co.,* 712 F.Supp. at 297 (holding that "person" and "enterprise" need not be separate entities for the purpose of pleading a § 1962(a) violation) *with Rush v. Oppenheimer & Co.,* 628 F.Supp. 1188, 1196–97 (S.D.N.Y.1985) (holding that "person" and "enterprise" must be distinct). Judge Wexler's position in *Long Island Lighting Co.*—which he reaffirmed in *North Star Contracting Corp. v. Long Island Rail Road,* 723 F.Supp. 902, 907 (E.D.N.Y.1989)—appears to be the majority rule. *See Schofield v. First Commodity Corp. of Boston,* 793 F.2d 28, 32

(1st Cir.1986); *Haroco,* 747 F.2d at 402; *Downing v. Halliburton & Associates,* 812 F.Supp. 1175, 1179–80 (M.D.Ala.1993), *aff'd,* 13 F.3d 410 (11th Cir.1994). For the purposes of this motion, the court will assume that this view is correct, and that a defendant may violate § 1962(a) by investing racketeering proceeds in its own operations.

Under *Ouaknine,* however, the injury from such reinvestment must be distinct from the underlying racketeering activity. As numerous courts in this circuit have held, when a defendant derives income from a pattern of racketeering activity, and then reinvests the proceeds of that activity in its general business operations, it is the racketeering activity which injures the plaintiff, and not the "investment." *See Update Traffic Systems v. Gould,* 857 F.Supp. 274, 283 (E.D.N.Y.1994); *Morin v. Trupin,* 832 F.Supp. 93, 98–99 (S.D.N.Y.1993); *Giuliano v. Everything Yogurt,* 819 F.Supp. 240, 248–49 (E.D.N.Y. 1993); *Williamson v. Simon & Schuster,* 735 F.Supp. 565, 568 (S.D.N.Y.1990); *Vista Co. v. Columbia Pictures Industries,* 725 F.Supp. 1286, 1299–1300 (S.D.N.Y.1989); *De Muro v. E.F. Hutton,* 643 F.Supp. 63 (S.D.N.Y.1986).

■ Applying these standards, the court concludes that the defendants are all entitled to summary judgment on plaintiffs' § 1962(a) claim. Plaintiffs' theory of liability under § 1962(a) is as follows:

When a Fund contractor fails to receive or is forced to surrender a contract to a Local 3 Contractor, the circle of the Conspiracy begins. First, the Local 3 Contractor, as a result of receiving a contract which it had not previously been awarded, earns money in the form of profits. Second, the Local 3 Contractor contributes .5% of its weekly wage payroll to JIB pursuant to an agreement it authorized the Associations to approve; hence the more business a Local 3 Contractor does, the more money is fed into JIB slush fund. Third, the Local 3 Contractor contributes .5% of its weekly wage payroll to the Associations pursuant to their Constitutions and By–Laws; hence, the more business a Local 3 Contractor does, the more money is fed into the Associations' coffers.

Fourth, the Local 3 Contractor contributes a portion of the money to the benefit funds managed by JIB, which inures to the benefit of the Local 3 members. And finally, the Local 3 Contractor pays a portion of the money to Local 3 members hired to work on the contract.

This income stream is derived from defendants' racketeering activity and directly benefits each of the members of the enterprise.

Pl. Mem. at 82. Plaintiffs are somewhat nebulous as to the identity of the "enterprise," describing it either as an association-in-fact of all defendants or as each of the defendants individually. Pl. Mem. at 82; Compl. ¶ 36.

Under this theory, the court concludes that there are no issues of material fact which preclude summary judgment for defendants on plaintiffs' § 1962(a) counts. First, AECI, NYECA and JIB can only be liable if they received income from racketeering activities in which they participated as a principal. The record is devoid of any evidence which suggests that any of these defendants engaged in any racketeering activity. Rather, the evidence before the court clearly indicates that the alleged racketeering activity was committed by members of Local 3. While the evidence submitted by plaintiffs thus raises an issue of material fact as to whether Local 3 engaged in racketeering activities as a principal, plaintiffs' § 1962(a) claim against the union fails because they have not suffered any injury based on Local 3's investment of the proceeds of racketeering activity, as distinct from the racketeering activity itself.

The racketeering activities alleged in the complaint are extortion in violation of N.Y. Penal Law § 155.05(2)(e) and interference with commerce by threats or violence in violation of the Hobbs Act, 18 U.S.C. § 1951.[8] The primary acts alleged to constitute such extortion and interference with commerce are the series of threats and acts of harassment, including bombings and acts of arson, identified in paragraphs 25 through 27 of the complaint, and further detailed in the affidavits plaintiffs submitted in opposition to this motion.[9] Having reviewed these affidavits, the court concludes that plaintiffs have not identified any facts which suggest that JIB, AECI, or NYECA played any part in these incidents.

Almost all of the incidents described in plaintiffs' affidavits involve activities carried out by members of Local 3. Plaintiffs have not identified any facts which suggest that either AECI or NYECA had any involvement in these activities. Nor have they identified any facts which clearly point to JIB's involvement. The only indication that JIB had anything to do with any of the threats or acts of violence directed toward plaintiffs is that fact that some of the Local 3 members allegedly responsible for these acts were also employee representatives of JIB.

For example, several officers of plaintiff companies allege that they attended a meet-

8. Plaintiffs also argue in their motion papers that defendants have illegally funded the JIB in violation of § 302 of the Labor Management Relations Act, 29 U.S.C. § 186. While a violation of 29 U.S.C. § 186 would be a predicate act under RICO, the court finds that, even if these allegations were properly pleaded in the complaint, they would not state a claim under this statute.

In general, 29 U.S.C. § 186 makes it unlawful for an employer or association of employers to make any payments to a labor organization. Even assuming that JIB is a labor organization, however—a fact it contests—payments made by NYECA and AECI would not be unlawful. Under 29 U.S.C. § 186(c)(9), payments to a joint-labor management committee such as JIB are permissible. *See BASF Wyandotte Corp. v. Local 227, Int'l Chemical Workers Union,* 791 F.2d 1046, 1053 (2d Cir.1986). Plaintiff's allegations concerning violations of this statute are therefore fatally defective.

9. Plaintiffs also contend that JIB has conducted a systematic campaign to harass them through the filing of litigation and administrative complaints. These activities, however, are entirely legitimate, and, even if meritless, cannot be said to constitute either extortion under N.Y. Penal Law § 155.05(2)(e) or interference with commerce in violation of 18 U.S.C. § 1951. Both these statutes require that the defendant threaten force or violence or instill fear in the plaintiff. The filing of a meritless lawsuit or administrative action, even if for the purpose of harassment, does not involve a threat of force, violence or fear. *See Park South Assoc. v. Fischbein,* 626 F.Supp. 1108, 1114 (S.D.N.Y.1986) (dismissing RICO action based upon Hobbs Act and state law extortion through allegedly meritless litigation).

ing in 1990 with Thomas Van Arsdale, whom they describe as the business manager of Local 3 and an employee representative of JIB, and with several other union officials, some of whom also were representatives of JIB. At the meeting, Van Arsdale attempted to pressure plaintiffs into signing collective bargaining agreements with Local 3, and stated that if they signed such agreements, their "troubles would disappear" and things would "be a lot easier." Plaintiffs state that they interpreted these statements as promises that Local 3 would cease its acts of vandalism and harassment if they signed collective bargaining agreements. Cardillo Aff., Pl.Ex. B, at ¶¶ 20–21; E. Iovine Aff., Pl.Ex. I, at ¶¶ 14–15; Micelotta Aff., Pl.Ex. L, at ¶¶ 21–22. They do not state, however, that they understood Van Arsdale to be acting in his capacity as a representative of JIB, or that they understood JIB to be responsible for these acts. The mere fact that Van Arsdale, in addition to being the business manager of Local 3, was also an employee representative of JIB, however, does not mean that his activities can automatically be attributed to JIB. Plaintiffs' affidavits certainly raise a genuine issue of material fact as to whether Local 3 deliberately engaged in deliberate campaign of violent harassment. However, the court finds that no reasonable trier of fact could conclude that JIB acted as a principal in any of these incidents simply because some of the individuals involved were also members of JIB.

Plaintiff's attempts to link the associations and JIB to these incidents all depend on a novel and unwarranted extension of the concept of conspiracy liability under *Pinkerton v. United States,* 328 U.S. 640, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946). Plaintiffs contend that, because all defendants are engaged in a "conspiracy," the substantive acts of one defendant can be "imputed" to each of the other defendants. Pl. Mem. at 74–75. They cite several cases which note that, under New York law, proof of a civil conspiracy subjects exposes a defendant to joint and several liability for the actions of co-conspirators in furtherance of the conspiracy. *See Kashi v. Gratsos,* 790 F.2d 1050, 1054–55 (2d Cir.1986). That does not mean, however, that predicate acts of one defendant can be

attributed to another defendant for the purpose of establishing liability under RICO merely by alleging a "conspiracy." Indeed, such a rule would be contrary to the express statutory language of § 1962(a), which limits liability to those defendants who participate in racketeering activity as a principal within the meaning of 18 U.S.C. § 2. That provision reads as follows:

> (a) Whoever commits an offense against the United States or aids, abets, counsels, commands, induces or procures its commission, is punishable as a principal.

> (b) Whoever willfully causes an act to be done which if directly performed by him or another would be an offense against the United States, is punishable as a principal.

In the absence of any indication that AECI, NYECA or JIB in any way aided, abetted, counseled, commanded, induced, or procured or otherwise caused the commission of the various racketeering acts identified by plaintiffs, the court concludes that no genuine issue of material fact exists which precludes summary judgment for these defendants on plaintiffs' § 1962(a) claim.

■ Plaintiffs' § 1962(a) claim against Local 3 stands on a slightly different but no less treacherous footing. Plaintiffs have clearly identified issues of material fact which suggest that Local 3 was sufficiently involved in the commission of racketeering acts to satisfy the requirement that it participated as a principal within the meaning of 18 U.S.C. § 2. For Local 3 to be liable for a violation of § 1962(a), however, plaintiffs must also have been injured by an investment of income derived from a pattern of racketeering activity. Even assuming that Local 3 derived income from the racketeering activities of its members, plaintiffs have identified no enterprise in which Local 3 invested such money, apart from Local 3 itself. Plaintiffs do not appear to contend that Local 3 invested any money in JIB, AECI, or NYECA. Rather, they contend that Local 3 *contractors* derive money through a pattern of racketeering activity conducted by Local 3 members, and that the contractors then contribute a portion of that money to the union.

To the extent that Local 3 simply re-invests the proceeds of its racketeering activities in its own operations, it is not the investment that causes plaintiffs harm. Rather, it is the underlying racketeering activity that injures them. *See, e.g. Giuliano,* 819 F.Supp. at 248–49; *Williamson,* 735 F.Supp. at 568. As Judge Sand noted in *Williamson,* "use of racketeering proceeds for general overhead purposes of an enterprise not engaged solely in illegal activity may be encompassed by the language of Section 1962(a), [but] it does not satisfy the Second Circuit's holding in *Ouaknine* that to state an actionable claim under Section 1964(c) plaintiff must allege injury by reason of the defendant's violation of Section 1962(a)." 735 F.Supp. at 568. Any contrary conclusion would render the causation requirement of § 1964(c) meaningless, because any injury from a racketeering act could be said to have been "caused" by the investment of income gained through previous racketeering activities in the general operations of the enterprise. *Id.* The court therefore concludes that there is no genuine issue of material fact as to whether plaintiffs were injured by an investment of racketeering income by Local 3. Local 3 is therefore entitled to summary judgment on the 1962(a) claim.

### B. *§ 1962(c) violation*

Section 1962(c) of RICO provides as follows:

It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of an unlawful debt.

18 U.S.C. § 1962(c).

█ In this case, plaintiffs have alleged that JIB is the "enterprise" for the purpose of their § 1962(c) claim. Compl. ¶¶ 50–51; Pl. Mem. at 84. Since the "person" and the "enterprise" must be distinct in a § 1962(c) claim, *see, e.g., Bennett v. United States Trust Co.,* 770 F.2d 308 (2d Cir.1985), *cert. denied,* 474 U.S. 1058, 106 S.Ct. 800, 88 L.Ed.2d 776 (1986), plaintiffs have not sought to make JIB a defendant to this count. *See* Pl. Mem. at 84. In order to hold the other defendants liable, then, plaintiffs must show that they "conducted or participated" in the conduct of JIB's affairs through a pattern of racketeering activity.

█ In this case, as noted above, plaintiffs have not identified any evidence linking AECI or NYECA to any predicate acts of racketeering. This failure alone would be enough to warrant summary judgment for these defendants. However, plaintiffs' claim suffers from a further defect. Given that JIB is the enterprise, plaintiffs must show a relationship, or "nexus" between JIB's affairs and the defendants' predicate acts of racketeering. *See, e.g., United States v. Thai,* 29 F.3d 785, 815 (2d Cir.1994). The "nexus" requirement is satisfied "if the offense was related to the enterprise's activities, whether or not it was in furtherance of those activities, or if the defendant was enabled to commit the offense solely by virtue of his position in the enterprise." *Id.*

█ Clearly, the second prong of this test does not apply to this case. To the extent that Local 3 has engaged in racketeering activities, it was not able to commit those enterprises solely by virtue of its position in JIB. Indeed, Local 3, like NYECA and AECI, does not have any formal position in JIB. It merely appoints representatives to JIB. Thus, for any of these defendants to have conducted the affairs of JIB through a pattern of racketeering activity, the underlying activity must be "related" to JIB's activities. "Relatedness" does not require proof that the racketeering activity be undertaken for the benefit of the enterprise, that it be authorized by the enterprise, or that the enterprise has engaged in any corrupt activity. *See United States v. LeRoy,* 687 F.2d 610 (2d Cir.1982) (finding that union official's receipt of illicit funds was related to affairs of union, even if undertaken solely for personal gain); *United States v. Scotto,* 641 F.2d 47, 55 (2d Cir.1980) (noting that "relatedness" between union official's receipt of kickbacks and affairs of union did not require showing that union was corrupt, or that union's policies and administration were changed by

racketeering pattern)[10]. But at the very least, "relatedness" requires some clear link between the activity and the enterprise. *See Scotto,* 641 F.2d at 54 ("Simply committing predicate acts which are unrelated to the enterprise or one's position in it would be insufficient.").

Here, the evidence does not show any such link between the activities of JIB and any of the alleged racketeering activities. JIB's primary function is to administer qualified employee-benefit plans for workers covered by the collective-bargaining agreement with Local 3. Schuck Aff. ¶ 8. It also seeks to promote harmony between labor and management within the industry. As part of that goal, it monitors compliance with the prevailing wage requirements of New York labor law, and has filed numerous administrative complaints with the New York City Comptroller's office, New York State Comptroller's office, and U.S. Department of Labor. Schuck Aff. ¶¶ 28–43; Wishnie Aff. ¶ 4–19. Although some of these activities may cause injury to plaintiff contractors, none of them is illegal. Nor do these activities have any clear connection to the acts of racketeering identified by the plaintiffs.

### C. § 1962(d) violations

 Counts One and Two of the complaint each allege a violation of § 1962(d), which makes it unlawful to conspire to violate any of the other subsections of § 1962. Plaintiffs allege that defendants conspired to violate § 1962(a) and § 1962(c). Thus they must ultimately be able to show that defendants conspired either (1) to invest income gained from a pattern of racketeering activity in which they participated as a principal in an enterprise engaged in interstate or foreign commerce, or (2) to conduct the affairs of JIB through a pattern of racketeering

activity. For the following reasons, the court concludes that there is no issue of material fact that precludes summary judgment for defendants.

 To prove a conspiracy to violate either § 1962(a) or § 1962(c), plaintiffs must be able to show that each defendant agreed to commit at least two predicate acts of racketeering. *See Spira v. Nick,* 876 F.Supp. 553, 560 (S.D.N.Y.1995) (analyzing claim of conspiracy to violate § 1962(a) and § 1962(c)); *see also United States v. Ruggiero,* 726 F.2d 913, 921 (2d Cir.), *cert. denied sub nom. Rabito v. United States,* 469 U.S. 831, 105 S.Ct. 118, 83 L.Ed.2d 60 (1984); *Pryba v. United States,* 498 U.S. 924, 925, 111 S.Ct. 305, 112 L.Ed.2d 258 (1990) (White, J., dissenting from denial of certiorari) (noting split among circuits as to whether RICO conspiracy requires each defendant personally to agree to commit predicate acts). Here, no evidence has been identified which suggests that AECI, NYECA or JIB ever agreed to commit any predicate acts. While there is evidence suggesting that Local 3 engaged in racketeering activity, there is no evidence of an agreement with the other defendants. In the absence of any such agreement, the conspiracy claim must fail.

Plaintiffs offer the following arguments in support of their claim of a conspiracy. First, they claim that Local 3 and the Associations have entered into an illegal agreement to fund JIB. Pl. Mem. at 42. For the reasons noted above,[11] this argument is without merit. Second, they claim that JIB's tax-exempt status does not permit it to engage in certain activities. Even if it were proved, however, this allegation would not support the claim that JIB, Local 3, and the associations were engaged in a conspiracy to violate RICO. Pl. Mem. at 39. Third, they claim that JIB's real purpose is to drive plaintiff contractors

---

**10.** To the extent that *Scotto* held that a person may be liable under RICO simply because the requisite nexus exists between his activity and the affairs of the enterprise, it was overruled by the Supreme Court's decision in *Reves v. Ernst & Young,* 507 U.S. 170, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993), holding that a person must be involved in the "operation or management" of an enterprise to be liable under RICO. *See Napoli v. United States,* 45 F.3d 680 (2d Cir.1995); *United States v. Viola,* 35 F.3d 37 (2d Cir.1994).

To the extent that *Scotto* held that a person cannot be liable under RICO unless there is a sufficient nexus between his racketeering activity and the enterprise, it remains good law, as evidenced by the Second Circuit's use of language derived from the *Scotto* opinion in *Thai,* a post–*Reves* decision.

**11.** *See* discussion *supra* note 8

out of business by harassing them through the lawsuits and administrative actions it has filed. Pl. Mem. at 41. Since these activities are entirely legitimate, as discussed above, they do not indicate that any defendants agreed with any other defendants to engage in predicate acts. Fourth, plaintiffs cite minutes of Local 3 meetings in which members complain of unemployment. While these minutes suggest a motive for union members to engage in acts of racketeering, they do not suggest that any of the defendants entered into a RICO conspiracy. Fifth, they argue that JIB's power to determine the rates at which Local 3 contractors can bid on contracts gives it an unfair advantage with respect to publicly financed jobs that are subject to prevailing wage laws. Pl. Mem. at 52–54. Again, this does not suggest that any of the defendants ever entered into an agreement to commit acts of racketeering. Sixth, they point to the involvement in racketeering activities of Local 3 members who were also representatives of JIB. As noted above, however, the mere fact that some Local 3 members are also JIB representatives does not in itself point to JIB's involvement in acts of racketeering. Finally, they note that JIB runs the Local 3 hiring hall—a function usually reserved for labor organizations—and cite testimony from several plaintiff contractors to the effect that JIB is merely an alter ego of Local 3.

Taken together, these allegations do not raise a genuine issue of material fact suggesting that any defendant ever agreed with any other defendant to violate RICO. At most, they suggest that the defendants had close ties to one another, and some unity of interests. Even if proved, however, these facts would not be sufficient to convince a reasonable trier of fact that a conspiracy to violate RICO existed. All defendants are therefore entitled to summary judgment on plaintiffs' § 1962(d) claims.

## IV. *Plaintiffs' Antitrust Claims*

Section 1 of the Sherman Act prohibits contracts, combinations or conspiracies in restraint of trade. "To state a claim under Section 1, a plaintiff must allege joint conduct or concerted action; independent action is not proscribed." *Brown v. Visa U.S.A., Inc.*, 674 F.Supp. 249, 251 (N.D.Ill. 1987). Section 2 of the Sherman Act, which prohibits monopolies, attempts to monopolize and conspiracies to monopolize, reaches both unilateral and concerted activity; however, if there is no dangerous probability of monopolization, plaintiff must establish a conspiracy to monopolize. *Copperweld Corp. v. Independence Tube Corp.*, 467 U.S. 752, 767–68, 104 S.Ct. 2731, 81 L.Ed.2d 628 (1984). To prove a conspiracy, there must be evidence of a "unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *International Distrib. Ctrs., Inc. v. Walsh Trucking Co.*, 812 F.2d 786, 793 (2d Cir.1987) (citations omitted), *cert. denied*, 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987).

The gravamen of defendant's motion is that plaintiff has failed to adduce evidence of a conspiracy under either § 1 or § 2. The Second Circuit has recognized that a § 2 conspiracy is covered by the "broader umbrella" of a § 1 conspiracy. *H.L. Hayden Co. v. Siemens Medical Sys., Inc.*, 879 F.2d 1005, 1019 n. 9 (2d Cir.1989). In this case, however, the factual underpinning of the alleged conspiracy is identical under the § 1 claims and § 2 claim.

### A. *Insufficient Evidence of a Conspiracy*

In examining the record in this case, the court must draw all favorable inferences in favor of the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ramseur v. Chase Manhattan Bank*, 865 F.2d 460, 465 (2d Cir.1989). "However, the Supreme Court has stated that 'antitrust law limits the range of permissible inferences from ambiguous evidence in a § 1 case.'" *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir.1987), *cert. denied*, 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987) (quoting *Matsushita*, 475 U.S. at 588, 106 S.Ct. at 1356). The Supreme Court has established a specific standard with respect to motions for summary judgment in antitrust cases where the issue is, as here, whether the necessary conspiracy existed:

There must be evidence that tends to exclude the possibility that [the alleged conspirators] were acting independently ... the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that [the alleged conspirators] "had a conscious commitment to a common scheme designed to achieve an unlawful objective."

*Monsanto Co. v. Spray–Rite Serv. Corp.,* 465 U.S. 752, 764, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984) (citing *Edward J. Sweeney & Sons, Inc. v. Texaco, Inc.,* 637 F.2d 105, 111 (3d Cir.1980), *cert. denied,* 451 U.S. 911, 101 S.Ct. 1981, 68 L.Ed.2d 300 (1981)).

In reaffirming the *Monsanto* standard a few years later, the Court reiterated that

conduct as consistent with permissible competition as with illegal conspiracy does not, standing alone, support an inference of antitrust conspiracy ... [plaintiffs] must show that the inference of conspiracy is reasonable in light of the competing inferences of independent action or collusive action that could not have harmed [the plaintiff].

*Matsushita,* 475 U.S. at 588, 106 S.Ct. at 1356.

The Court in *Matsushita* noted the potential threat of undesirable deterrence to procompetitive conduct if fact-finders are permitted to infer implausible conspiracies. *Id.* at 593, 106 S.Ct. at 1359. The Court further stressed that even if a plaintiff can show that the defendants had a plausible economic motive to conspire, ambiguous conduct does not create a triable issue of conspiracy. *Id.* at 597, 106 S.Ct. at 1361, n. 21; *see also Apex Oil,* 822 F.2d at 253; *City Communications, Inc. v. City of Detroit,* 695 F.Supp. 911, 915 (E.D.Mich.1988) (granting defendant's motion for summary judgment for insufficient evidence of conspiracy), *aff'd,* 888 F.2d 1081 (6th Cir.1989).

However, the Second Circuit Court recently emphasized in the context of an antitrust summary judgment motion that, "while some assessment of the evidence is necessary to determine rationally what inferences are reasonable and therefore permissible, it is evident that the question of what weight should be assigned to compet-

ing permissible inferences remains within the province of the fact-finder at a trial."

*Transnor (Bermuda) Ltd. v. BP N. Am. Petroleum,* 738 F.Supp. 1472, 1478 n. 4 (S.D.N.Y.1990) (quoting *Apex Oil,* 822 F.2d at 253).

Because direct proof of an illegal agreement is rarely available, an antitrust conspiracy may be proved through the use of circumstantial evidence alone. *Transnor (Bermuda),* 738 F.Supp. at 1483; *Apex Oil Co. v. DiMauro,* 641 F.Supp. 1246, 1258 (S.D.N.Y.1986), *aff'd in part, rev'd in part,* 822 F.2d 246, 252 (2d Cir.1987), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *Lemelson v. Bendix Corp.,* 621 F.Supp. 1122, 1130 (D.Del.1985) (granting summary judgment in favor of defendant because plaintiff's allegation of conspiracy was merely speculative, despite circumstantial evidence consistent with the existence of a conspiracy), *aff'd without op.,* 800 F.2d 1135 (3d Cir.1986). In relying entirely upon circumstantial evidence, however, "plaintiff must overcome the inherent limitations" on the use of such evidence, and inferences drawn therefrom must be reasonable and not merely speculative. *Id.* at 1130. The *Lemelson* court concluded that where two plausible versions of the facts exist, one legitimate and the other unlawful, to survive summary judgment, some piece of circumstantial evidence must make the existence of unlawful conspiracy more likely. *Id.*

The Second Circuit has also stressed that where competing versions of the facts are equally plausible, the case should not be decided by a jury: "[w]e have overturned jury verdicts where, 'taken as a whole, the evidence point[ed] with at least as much force toward unilateral actions by [the defendants] as toward conspiracy, and a jury would have to engage in impermissible speculation to reach the latter conclusion.'" *International Distrib. Ctrs., Inc. v. Walsh Trucking Co.,* 812 F.2d 786, 794 (2d Cir.1987), *cert. denied,* 482 U.S. 915, 107 S.Ct. 3188, 96 L.Ed.2d 676 (1987). In that case, the court reversed the district court's refusal to enter judgment notwithstanding the jury verdict on the ground that plaintiff's evidence was as consistent

with permissible competition as with an unlawful conspiracy. *Id.* at 795.

▮ Applying these standards to the present case, it is clear for all of the reasons explained above in the discussion of a RICO conspiracy that the alleged acts of violence, threats, vandalism, and pressure to bargain with Local 3 are more likely the result of unilateral action by Local 3 than a concerted agreement between defendants to restrain trade or monopolize the electrical contracting market. Further, because plaintiffs have adduced no evidence that the various litigation commenced against them was "objectively baseless in that no reasonable litigant could realistically expect success on the merits," these actions are exempted from antitrust scrutiny by the *Noerr–Pennington* doctrine. *See Professional Real Estate Investors v. Columbia Pictures,* 508 U.S. 49, 113 S.Ct. 1920, 123 L.Ed.2d 611 (1993); *California Motor Transport Co. v. Trucking Unlimited,* 404 U.S. 508, 92 S.Ct. 609, 30 L.Ed.2d 642 (1972); *United Mine Workers v. Pennington,* 381 U.S. 657, 85 S.Ct. 1585, 14 L.Ed.2d 626 (1965); *Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1961). Finally, because there is no evidence of an unlawful agreement between Local 3, JIB, and the Associations, all of Local 3's strikes, sit-ins, and secondary boycotts, even if they included threats of violence and harassment and caused plaintiffs to lose contracts for electrical work, engaged in apart from any non-labor group in the context of the labor dispute with Local 363, are statutorily exempt from antitrust scrutiny. *Hunt v. Crumboch,* 325 U.S. 821, 65 S.Ct. 1545, 89 L.Ed. 1954 (1945); *United States v. Hutcheson,* 312 U.S. 219, 232, 61 S.Ct. 463, 85 L.Ed. 788 (1941); *Apex Hosiery Co. v. Leader,* 310 U.S. 469, 60 S.Ct. 982, 84 L.Ed. 1311 (1940); *Wickham Contracting Co. v. Board of Educ.,* 715 F.2d 21, 29 (2d Cir.1983) (Oakes, J., dissenting); *Perry v. International Transport Workers' Fed'n,* 750 F.Supp. 1189, 1195 (S.D.N.Y. 1990). Therefore, summary judgment must be granted in favor of all defendants on Count Three, a conspiracy in restraint of trade in violation of 15 U.S.C. § 1, and Count Five, a conspiracy to monopolize the electrical services market in New York City.

## B. *Attempted and Actual Monopolization*

▮ "The offense of monopolization under § 2 of the Sherman Act consists of two elements: (1) the possession of monopoly power in the relevant market; and (2) the willful acquisition or maintenance of that power, as distinguished from growth or development as a consequence of a superior product, business acumen, or historic accident." *Volvo N. Am. v. Men's Int'l Professional Tennis Council,* 857 F.2d 55, 73 (2d Cir.1988). "The offense of attempted monopolization under § 2 of the Sherman Act requires proof of three elements: (1) anticompetitive or exclusionary conduct; (2) specific intent to monopolize; and (3) a dangerous probability that the attempt will succeed." *Id.* at 73–74. Neither attempted nor actual monopolization under 15 U.S.C. § 2 requires proof of a conspiracy. Even assuming that defendants engaged in such activities with intent to monopolize, plaintiffs have demonstrated neither that defendants have actually and wilfully achieved monopoly power, nor that they came dangerously close to achieving such power. No evidence of defendants' actual market share has been supplied to the court, other than the unsupported claim that Local 3 contractors, approximately half of whom are not defendants in this case, provide five billion dollars of electrical services annually while Fund contractors only provide eight hundred million. Second Am. Compl. ¶¶ 3, 5, 18. Plaintiffs' memorandum of law does not even address defendants' motions for summary judgment on the § 2 claims. For these reasons, summary judgment is granted in favor of all defendants on counts Four and Six.

## V. *Plaintiffs' Claims Under § 303 of the LMRA*

Count Seven of the Second Amended Complaint alleges that each of the acts described in paragraphs 25 through 27 perpetrated by Local 3 constitute unfair labor practices pursuant to § 303 of the Labor Management Relations Act of 1947, 29 U.S.C. § 187. Section 303 provides direct federal court juris-

diction, carved out from the exclusive jurisdiction of the National Labor Relations Board, for violations of 29 U.S.C. § 158(b)(4), the "secondary boycott" prohibition of the National Labor Relations Act.[12]

█ AECI and NYECA argue that they are neither labor organizations nor agents of a labor organization as that term is defined by 29 U.S.C. § 152(5), and that summary judgment must be granted for this reason. Plaintiffs concede that the Associations cannot be liable for money damages under § 303. Pl.'s Mem. at 26 n. 8. These defendants are therefore entitled to summary judgment. JIB similarly argues that it is not a labor organization under 29 U.S.C. § 152(5). Even assuming that there is a genuine issue of material fact as to whether JIB is a labor organization, the court concludes that JIB is entitled to summary judgment on plaintiffs' § 303 claim because plaintiffs have not identified any evidence which suggests that JIB engaged in any unfair labor practice.

As noted above, the only significant evidence of wrongdoing by JIB consists of affidavits submitted by plaintiffs in which Thomas Van Arsdale, who is identified as the business manager of Local 3 and an employee representative of JIB, threatened contractors with continued harassment if they did not sign collective bargaining agreements with Local 3. See, e.g., Cardillo Aff., Pl.Ex. B, at ¶¶ 20–21; E. Iovine Aff., Pl.Ex. I, at

¶¶ 14–15; Micelotta Aff., Pl.Ex. L, at ¶¶ 21–22. Even if Van Arsdale was a representative of JIB, nothing in the affidavits suggests that in making these threats, he was acting in that capacity.

Assuming that JIB is a labor organization, its liability for the acts of its agents is governed by common-law agency principles. See NLRB v. Local 815, International Brotherhood of Teamsters, 290 F.2d 99, 103 (2d Cir.1961); see also NLRB v. Local Union 1058, United Mine Workers of America, 957 F.2d 149, 152 (4th Cir.1992). Under the specific dictates of 29 U.S.C. § 185(e), which are incorporated by reference into § 303, the question of whether an agent's actions were actually authorized by JIB or subsequently ratified by JIB is not controlling. JIB may be bound by the actions of Van Arsdale if he possessed either implied or apparent authority for his actions. See Local Union 1058, 957 F.2d at 152; Local 815, 290 F.2d at 103 (noting that "a principal may be held responsible for the acts of an agent whom it has placed in such a position that persons dealing with the agent reasonably believe the acts to be authorized").

No common-law principle of agency, however, suffices to establish JIB's liability here. Plaintiffs have identified no facts which suggest that JIB either expressly or impliedly authorized Van Arsdale's conduct, or that it subsequently ratified that conduct. Nor do plaintiffs' affidavits indicate that they reason-

---

12. The relevant provisions of Section 158(b)(4) make it an unfair labor practice for a labor organization or its agents:

(i) to engage in, or to induce or encourage any individual employed by any person engaged in commerce or in an industry affecting commerce to engage in, a strike or a refusal in the course of his employment to use, manufacture, process, transport, or otherwise handle or work on any goods, articles, materials or commodities or to perform any services; or (ii) to threaten, coerce, or restrain any person engaged in commerce or in an industry affecting commerce, where in either an object thereof is—

\* \* \* \* \* \*

(B) forcing or requiring any person to cease using, selling, handling, transporting, or otherwise dealing in products of any other producer, processor or manufacturer, or to cease doing business with any other person, or forcing

or requiring any other employer to recognize or bargain with a labor organization as the representative of his employees unless such labor organization has been certified as the representative of such employees under the provisions of section 9 . . .

(C) forcing or requiring any employer to recognize or bargain with a particular labor organization as the representative of his employees if another labor organization has been certified as the representative of such employees under the provisions of section 9;

(D) forcing or requiring any employer to assign particular work to employees in a particular labor organization or a particular trade, craft, or class rather than to employees in another labor organization or in another trade, craft, or class, unless such employer is failing to conform to an order or certification of the Board determining the bargaining representative for employees performing such work:

\* \* \* \* \* \*

ably perceived Van Arsdale to be acting on behalf of JIB. To the contrary, they clearly indicate that plaintiffs understood Van Arsdale to be acting on behalf of Local 3. In the absence of any other evidence suggesting that JIB engaged in threats, secondary boycotts, or other unfair labor practices, the court must grant summary judgment to JIB.

With respect to Local 3, plaintiffs have provided ample evidence of threats and secondary boycotts carried out by union members. *See, e.g.,* Bruno Aff., ¶¶ 2–5: Cardillo Aff., ¶¶ 20, 21, 22; Cunardi Aff., ¶ 7; Dello Russo Aff., ¶ 12; E. Iovine Aff., ¶¶ 14–15:, ¶¶ 21–22; Monti Aff., ¶¶ 2, 3; Micelotta Aff., ¶¶ 21–22; Ostroff Aff., ¶ 10; Pagnotta Aff., 2–9; Zarrelli Aff., ¶¶ 2–9; Ciccone Dep., Pl.'s Ex. 16; Pl.'s Ex. 19. These incidents raise a genuine issue of material fact sufficient to preclude summary judgment.

With respect to many of the incidents identified in the complaint, however, plaintiffs' action is time-barred. The statute of limitations for a § 303 claim is four years. *Monarch Long Beach Corp. v. Soft Drink Workers,* 762 F.2d 228, 232 (2d Cir.1985). Therefore, summary judgment is granted in favor of all defendants on the § 303 count with respect to the following allegations, each of which occurred more than four years prior to the filing of this lawsuit: 25(a), (b), (c), (d), (e), (f), (g), (h) and (I); 27(a), (b), (c), (d), (e), (f), (g), (h), (I), (j), (k), (*l*), (m), (n), (o), (p), (q) and (r). Furthermore, summary judgment is granted to the extent that plaintiffs seek to use the allegations of paragraph 26 regarding the use of litigation by defendants in violation of § 303. Such behavior is simply not proscribed by the provisions of 29 U.S.C. § 158(b)(4).

## VI. *Plaintiffs' State Law Claims*

Plaintiffs have brought state law claims for tortious interference with contract and tortious interference with prospective business relations. Because a federal claim remains in this lawsuit, the court retains supplemental subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). The parties are in agreement with respect to the applicable law.

"Under New York law, the following elements are required to state a claim for tortious interference with contract: (1) the existence of a valid contract between plaintiff and a third party; (2) the defendant's knowledge of the contract; (3) the defendant's intentional procurement of a breach of the contract by a third party; and (4) damages caused by the breach." *Campo v. 1st Nationwide Bank,* 857 F.Supp. 264, 272–73 (E.D.N.Y.1994); *Innovative Networks v. Satellite Airlines,* 871 F.Supp. 709, 727 (S.D.N.Y.1995). Plaintiff must establish that defendants' actions were the "but for" cause of the breach. *Sharma v. Skaarup Ship Management Corp.,* 916 F.2d 820, 828 (2d Cir.1990). To maintain a claim for tortious interference with prospective business relations (pre-contractual relations), plaintiffs "must allege that defendants interfered with business or economic relations between the plaintiff and a third party, either (1) with the sole purpose of harming the plaintiff; or (2) by dishonest, unfair or improper means." *Campo,* 857 F.Supp. at 273. The latter standard is more stringent that the former, and requires a showing of "criminal or fraudulent conduct." *Id.* (quoting *PPX Enter., Inc. v. Audiofidelity Enter., Inc.,* 818 F.2d 266, 269 (2d Cir.1987)); *Nifty Foods Corp. v. Great Atlantic & Pacific Tea Co.,* 614 F.2d 832, 838 (2d Cir.1980); *accord Corporate Training v. National Broadcasting Co.,* 868 F.Supp. 501, 513 (E.D.N.Y.1994) ("Under New York law, interference with pre-contractual relations is actionable where a contract would have been entered into but for the malicious, fraudulent, or deceitful acts of a third party").

Applying these standards to the relevant facts, which have been discussed at length in this opinion and need not be repeated in detail, the court finds, first, that plaintiffs have failed to establish either state law claim against the Associations. With respect to JIB, in the one relevant incident in which a JIB representative contacted a third-party in an attempt to procure a breach of contract, that third-party refused. Monti Aff., ¶¶ 3, 8. Further, because that incident occurred in 1989 or 1990, it may be barred by the applicable three year statute of limitations. *Marine Midland Bank v. Renck,* 208 A.D.2d 688, 617 N.Y.S.2d 507, 508 (2d Dep't 1994);

*Westinghouse Elec. v. Pyramid Champlain,* 193 A.D.2d 928, 597 N.Y.S.2d 811, 814 (3d Dep't 1993). Moreover, plaintiffs have not sufficiently established that JIB engaged in fraudulent or criminal conduct. Therefore, summary judgment is granted in favor of JIB and the Associations on both state law causes of action.

■ Many of plaintiffs' claims regarding Local 3 are also barred by the three year statute of limitations. Therefore, summary judgment is granted with respect to incidents described in the Second Amended Complaint that occurred prior to June 18, 1990.[13] With respect to other claims, however, plaintiffs have raised a genuine issue of material fact. There is sufficient evidence from which a reasonable jury could conclude that Local 3 members approached third parties, knowing those parties had contracts with plaintiffs for electrical work, and induced the third parties to withdraw work from plaintiff contractors. Zarrelli Aff., ¶¶ 2–9; Corso Aff., ¶¶ 2–5.[14] Further, although the evidence is largely circumstantial, plaintiffs have adduced a sufficient question of fact with respect to vandalism and harassment committed by Local 3 which, if proved, could amount to criminal conduct. *See, e.g.,* Pagnotta Aff., ¶¶ 2–8; Ostroff Aff., ¶¶ 8–10; Reilly Aff., ¶ 5.[15] Although Local 3 argues that it has not been indicted with respect to any of plaintiffs' allegations, the law does not suggest that an actual criminal action must be instituted in order to maintain a claim for intentional interference with prospective business relations where the defendant has undeniably acted to further its own interest. Therefore, summary judgment is denied with respect to Local 3 on all timely allegations contained in Count Eight.

### CONCLUSION AND ORDER

For the reasons explained above, the pending motions are resolved as follows. Plaintiff Building Industry Fund is hereby DISMISSED from this action. On Counts One through Six, summary judgment is GRANTED in favor of all defendants. On Counts Seven and Eight, summary judgment is GRANTED in favor of defendants JIB, AECI, and NYECA, and the complaint is hereby DISMISSED as to these defendants. Summary judgment on Counts Seven and Eight is further GRANTED in favor of Local 3 on all time-barred incidents as described above. With respect to the remaining claims against Local 3 in Counts Seven and Eight, the motion for summary judgment is DENIED.

SO ORDERED.

### OPINION AND ORDER ON RECONSIDERATION

Plaintiffs have moved for reconsideration of this court's Opinion and Order of February 8, 1996 (the "Order"). Defendant Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL–CIO ("Local 3") has also moved for reconsideration of the Order. For the reasons stated herein, plaintiffs' motion is denied, and Local 3's motion is granted in part and denied in part. In addition, plaintiffs' request for entry of a partial final judgment pursuant to Fed. R.Civ.P. 54(b) is denied.

### DISCUSSION

■ The standard controlling a motion for reargument under Local Civil Rule 3(j) is the same as that governing a motion to

---

13. In Count Eight of the Second Amended Complaint, ¶ 83, plaintiffs assert that their claims rest upon the allegations contained in paragraphs 22, 23, 25(a)(h)–(j) and 26(a)(c)–(h) and (j). Because there are no sub-sections of paragraph 26 beyond (d), this is clearly an error. Moreover, some of the affidavits upon which plaintiffs purport to rely to support their state law claims, Pl.'s Mem. of Law, at 100, correspond to paragraphs in the complaint that are not specifically listed in Count Eight. *Compare, e.g.,* Zarrelli Aff. with ¶ 25(u); Corso Aff. with ¶ 25(t). Having dismissed all claims accruing before June 18, 1990, the court leaves it to the plaintiffs to correct these errors.

14. Although this affidavit relies upon hearsay, the declarant, Patrick Ciccone, was deposed in this action. Thus, the affidavit may be considered because it is corroborated by evidence admissible at trial. *See Burlington Coat Factory Warehouse v. Esprit De Corp.,* 769 F.2d 919, 924 (2d Cir.1985).

15. The court observes that most of the truly violent allegations of vandalism and violence, such as bomb threats, occurred well before June 18, 1990.

amend a judgment pursuant to Fed.R.Civ.P. 59(e). *Ades v. Deloitte & Touche*, 843 F.Supp. 888, 891 (S.D.N.Y.1994); *Lotze v. Hoke*, 654 F.Supp. 605, 607 (E.D.N.Y.1987). A plaintiff must demonstrate either that there has been an intervening change of controlling law, that there is new evidence that bears upon the issues decided, or that the court overlooked controlling decisions or factual matters that were put before it on the underlying motion. *Ades*, 843 F.Supp. at 891. Furthermore, a party may not advance new facts, issues or arguments not previously presented to the court. *See Caribbean Trading & Fidelity Corp. v. Nigerian National Petroleum Corp.*, 948 F.2d 111, 115 (2d Cir. 1991), *cert. denied*, 504 U.S. 910, 112 S.Ct. 1941, 118 L.Ed.2d 547 (1992).

## I. Plaintiff's motion for reconsideration

■ In its Order of February 8, 1996, the court dismissed all of plaintiffs' claims against defendants under the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961–1968, and §§ 1 and 2 of Sherman Anti–Trust Act, 15 U.S.C. §§ 1 and 2. The court also dismissed all of plaintiff's remaining claims against defendants New York Electrical Contractors Association, Inc. ("NYECA"), Association of Electrical Contractors, Inc. ("AECI"), and Joint Industry Board of the Electrical Industry ("JIB"). Plaintiffs seek reconsideration of the Order as it relates to JIB. Plaintiffs argue that the court overlooked evidence that established the existence of genuine issues of material fact, precluding summary judgment for JIB.

■ The court does not agree. As discussed in the Order, the legal premise of plaintiffs' claims against JIB is misguided. Rather than arguing that Local 3 and JIB conspired for a particular illicit purpose, they try to establish that all defendants are engaged in an all-encompassing "Conspiracy." Under their theory of the case, because all defendants are associated with one another with the common goal of forcing plaintiff contractors to negotiate with Local 3, action of one defendant can be attributed to all the other defendants. The court rejects this novel theory of liability. The essence of a

conspiracy is not simply a commonality of interest. It involves an agreement by two or more people to accomplish a specific illegal objective. *See, e.g., United States v. Felix*, 503 U.S. 378, 389–90, 112 S.Ct. 1377, 118 L.Ed.2d 25 (1992) ("[T]he 'essence' of a conspiracy offense 'is in the agreement or confederation to commit a crime.'") (quoting *United States v. Bayer*, 331 U.S. 532, 542, 67 S.Ct. 1394, 91 L.Ed. 1654 (1947)). As discussed previously, plaintiffs have not identified evidence in the record that would demonstrate either that JIB committed acts of racketeering, or that it agreed with Local 3 to violate any provision of either RICO or the Sherman Act. In the absence of such evidence, plaintiffs' conspiracy claims cannot stand. *See Monsanto Co. v. Spray–Rite Service Corp.*, 465 U.S. 752, 764, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984) ("[T]he antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the manufacturer and others had a conscious commitment to a common scheme designed to achieve an unlawful objective.") (citations and internal quotation marks omitted); *Hecht v. Commerce Clearing House*, 897 F.2d 21, 25 ("[T]he core of a RICO conspiracy is an agreement to commit predicate acts ...."). All that plaintiffs have demonstrated is that certain members of Local 3—some of whom were also employee representatives of JIB—engaged in certain allegedly illegal actions.

The specific facts that plaintiffs have cited in the instant motion do not alter this conclusion. Although the court did not specifically refer to all of these incidents in its opinion, it considered each of them. For the sake of thoroughness, the court will elaborate on its reasoning concerning the specific that plaintiffs cite.

Plaintiffs first point to statements in the affidavit of Frank Micelotta, who stated that two members of Local 3, Angelo Granata and Salvatore Bruzzese, accosted him in 1975 and threatened to throw him down an elevator shaft if he testified before the National Labor Relations Board. This incident occurred some eighteen years before this action was filed—a detail plaintiffs do not mention in their motion papers—and its probative value

is therefore slight. In any case, Micelotta does not identify any clear link between JIB and this action, beyond the fact that "[a]t that time, I was aware that Mr. Granata was also a trustee of [JIB]." Pl.Ex. L, at ¶ 11.

Micelotta also referred to an incident in 1980—some thirteen years before this action was filed—in which his company, plaintiff Expert Electric Co., submitted the lowest bid for a particular electrical contracting job. He stated that:

> Subsequent to the submission of Expert's bid, Leonard Feinberg of Feinberg Electric telephoned me and told me that individuals from the JIB and Local 3 had used their influence to have the job put out for rebidding. I believed that Mr. Feinberg was talking about Mr. Granata, a trustee of the JIB, and that Mr. Granata had used his influence to have the job rebid.

Pl.Ex. L, at ¶ 16. Leaving aside the fact that Feinberg's statement is inadmissible hearsay,[1] Micelotta's description of this incident is insufficient to raise a genuine issue of material fact concerning JIB's involvement in any unlawful activity. Even if the court assumes the truth of the statement that "individuals from the JIB and Local 3 had used their influence to have the job put out for rebidding," that fact would not suggest that JIB either engaged in any predicate acts of racketeering or agreed to engage in such acts. Nor is a single, vague reference to JIB having used its "influence" on Local 3's behalf sufficient to support an inference of an antitrust conspiracy, in the absence of any other evidence in the record that would support such a conclusion.[2]

Plaintiffs next point to a series of statements involving Thomas Van Arsdale, the business manager of Local 3, who was also one of Local 3's representatives on JIB.

These allegations, which were discussed in the court's previous opinion, also do not suggest JIB's involvement in illegal activity. Plaintiffs have identified no specific evidence linking JIB to any of the incidents they describe, other than the fact that Van Arsdale was simultaneously a union official and a member of JIB. Plaintiffs also point to activities by Bernard Rosenberg, a representative of Local 3 and a member of JIB. These allegations suffer from the same defect. The fact that Rosenberg was a member of JIB is not, on its own, evidence of JIB's involvement in his activities.

Plaintiffs also refer to a letter that Richard Wishnie, the assistant chairman of JIB,[3] wrote in 1989 to the New York State Attorney General and the chairman of the Port Authority concerning plaintiff TAP Electrical Contracting Service, Inc. ("TAP"). Jack Cohen, the former assistant chief engineer for the Port Authority, stated in his affidavit that it was his "impression" that Wishnie's letter was part of an effort to have the Port Authority terminate a contract with TAP, which had been barred from bidding on New York State jobs. He also stated that, in July of 1990, the Port Authority decided not to award a contract to TAP, despite the fact that TAP had submitted the lowest bid for the job. With respect to this decision, he stated, "I believe the letters written by Local 3 and Richard Wishnie served to influence the Port Authority's decision to honor the New York State debarment of TAP." Pl.Ex. C, at § 11.

If Wishnie's letter had been produced, it would have qualified as evidence of official action by JIB. As described in Cohen's affidavit, however, Wishnie's letter is not indicative of any wrongdoing by JIB. It is clear that one of JIB's primary functions is to

---

1. Plaintiffs describe Feinberg's statement as an "admission of an agent of a defendant." Pl. Mem. at 5. The court assumes that they mean to suggest that it should be treated as an admission of a party-opponent, and therefore not hearsay under Fed.R.Evid. 801(d)(2). Although Feinberg Electric was named as a defendant in plaintiffs' original complaint, it was dropped from the amended complaint and the second amended complaint. Thus neither Feinberg nor Feinberg electric is a party-opponent. Nor have plaintiffs identified any evidence to suggest that Feinberg

is an agent of JIB, Local 3, or any other defendant, or even alleged that Feinberg or Feinberg Electric was part of the "conspiracy."

2. The court notes that Micelotta offered no explanation of the basis for his belief that Granata was involved. That allegation rests on pure speculation.

3. Local 3 contends that Wishnie's correct title is "assistant to the chairman."

monitor compliance with prevailing wage laws in the New York area. Sending a letter to the Port Authority informing it of violations by a potential bidder is consistent with that function. Cohen's affidavit—which is based entirely on "impressions" and "beliefs" unsupported by facts—does not suggest that JIB exerted any improper pressure on the Port Authority. Rather, it merely states that JIB brought certain truthful facts to the Port Authority's attention.

Finally, plaintiffs point to the affidavit of Anthony Cardillo, the president of TAP. Cardillo described an incident in 1982 in which a general contractor refused to hire TAP for a job, even though TAP had submitted the lowest bid for the job. He stated that the contractor "informed me that he had received calls from [JIB]. Thereafter, TAP was not awarded the contract and a Local 3 contractor received the job." Again, this statement is inadmissible hearsay, which may not be relied upon to raise an issue of fact on this motion. Disregarding that fact, however, it is clear that Cardillo's statement is not probative of anything. Cardillo does not describe the content of the phone calls from JIB. He offers no evidence that JIB did anything improper. He does not even state that he believed JIB's actions had some effect on the contractor's decision.

■ Disregarding those allegations that are nothing more than speculation or innuendo, the only evidence which plaintiffs have put forward against JIB is the fact that Granata, Van Arsdale, and Rosenberg were all members of JIB. Plaintiffs' characterization of these individuals as "representatives of the JIB" is misleading. As discussed in the court's previous opinion, JIB is an entity established by a collective bargaining agreement of January 1, 1943. It consists of thirty representatives, fifteen of whom are chosen by Local 3, and ten chosen by NYE-CA, four chosen by AECI, and one chosen by independent contractors. Plaintiffs describe Granata, Van Arsdale, and Rosenberg as "employee representatives of the JIB." In fact, they are employee representatives *to* the JIB. In other words, their function on JIB is to represent the members of Local 3. That fact does not mean that they necessarily represent JIB in all of their actions. Plaintiffs have not identified any evidence that suggests that JIB authorized the actions of these individuals, or appointed them as agents for any purpose. Thus plaintiffs' contention that these men were "agents" of JIB is unsupported by anything in the record.

Plaintiffs' recourse to the doctrine of "apparent authority" is unavailing.[4] Apparent authority is defined as "the power to affect the legal relations with another by transactions with third persons, professedly as agent for another, arising from and in accordance with the other's manifestations to such third persons." *Restatement (Second) of Agency* § 8 (1957); *see also American Society of Mechanical Engineers v. Hydrolevel Corp.*, 456 U.S. 556, 566 n. 5, 102 S.Ct. 1935, 72 L.Ed.2d 330 (1982) [hereinafter *ASME* ] (quoting *Restatement* definition). This doctrine applies most commonly to cases involving contracts and conveyances. For example, if JIB had manifested to plaintiffs that Van Arsdale had power to enter into contracts on its behalf, without actually granting him such authority, it could nonetheless be bound by any contracts that he entered into in JIB's name.

As the Supreme Court recognized in *ASME*, however, the apparent authority doctrine may also apply in tort cases in the federal system. In *ASME*, the plaintiff manufactured a new type of low-water fuel cutoff

---

4. Plaintiffs also refer in their reply papers to the doctrine of "inherent agency power," under which a principal may be held liable for an agent's acts. According to the *Restatement:*

> Inherent agency powers fall into two groups. The first and most familiar is the power of a servant to subject his master to liability for faulty conduct in performing his master's business.... [The] existence [of liability] depends in most cases upon the fact that the servant is acting in his employer's business and intends

so to act; it does not depend upon a connection between the principal's conduct and the harm done.

> The other type of inherent power subjects the principal to contractual liability or to the loss of his property when an agent has acted improperly in entering into contracts or making conveyances.

*Restatement,* § 8A cmt b. Neither of these situations would appear to be applicable in this case.

to be used in heating boilers. Two officers of its principal competitor also served as the chairman and vice chairman of a committee of the American Society of Mechanical Engineers, which had been entrusted with the job of drafting, revising, and interpreting its safety code provisions concerning low-water fuel cutoffs. These two men colluded with one another to draft a statement condemning fuel cutoffs of the type manufactured by the plaintiff. Although formally described as an "unofficial communication," the statement was sent out on ASME stationary and was signed by the secretary of the committee, a full-time ASME employee. 456 U.S. at 560–62. The Court held that, even though the two men were acting in their employers' interests, rather than ASME's interests, and even though ASME never ratified their actions, ASME could still be held liable under the apparent authority doctrine. *Id.* at 570–74. In many of the cases cited by plaintiffs, courts within this circuit have continued to rely on apparent authority as a basis for holding organizations liable for the tortious acts of their members. *See Jund v. Town of Hempstead,* 941 F.2d 1271, 1278–81 (2d Cir. 1991) (holding that town and county political party committees could be liable under 42 U.S.C. § 1983 for acts of members where committees authorized activities, even absent membership ratification); *Amendolare v. Schenkers International Forwarders,* 747 F.Supp. 162, 170–71 (E.D.N.Y.1990) (holding that labor union could be liable under RICO for actions of union officials undertaken with apparent authority).

▇▇▇ The apparent authority doctrine, however, does not automatically make an organization such as JIB liable for all actions committed by its members. The doctrine applies only when a principal makes a manifestation to a third party that the agent has authority to act on its behalf. *Restatement* § 8 cmt a ("Apparent authority results from a manifestation by a person that another is

his agent, the manifestation being made to a third person and not, as when authority is created, to the agent."); *see also ASME,* 456 U.S. at 566. Here, plaintiffs have presented no evidence of any manifestations made by JIB that might have created the impression that JIB had authorized the actions of Granata, Van Arsdale, and Rosenberg. With regard to the incidents not based only on sheer speculation, they have not presented evidence that anyone—other than perhaps Micelotta—understood these individuals to be acting on behalf of JIB.[5] All they have shown is that they were in fact members of JIB.

Plaintiff's complaint that the court "impermissibly crossed the well-defined line from issue finding to issue resolution," Pl. Mem. at 2, in its Order is unwarranted. To defeat a motion for summary judgment, a plaintiff must put forward sufficient probative evidence to establish the existence of a genuine issue of material fact. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (noting that "the plain language of Rule 56(c) mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."). Plaintiffs now argue that "it is well-recognized that the existence of an agency relationship, as well as the scope of the agent's authority, is a question of fact for a jury, and thus inappropriate for summary judgment," Pl. Mem. at 12, citing, among other authorities, *Cabrera v. Jakabovitz,* 24 F.3d 372, 386 (2d Cir.), *cert. denied,* 513 U.S. 876, 115 S.Ct. 205, 130 L.Ed.2d 135 (1994). That position misstates the applicable law. In *Cabrera,* the Second Circuit stated that *"[u]nless the facts are insufficient to support a finding of agency or there is no dispute as to the historical facts, the question of agency should be submitted*

---

5. In their reply papers, plaintiffs refer to several passages from the depositions of contractors who state that they understood JIB and Local 3 to be the same entity. With one exception, the contractors who made these statements are all different from the people who refer to unlawful activities by Granata, Van Arsdale, and Rosenberg. The one exception is Micelotta, whose

affidavit has scant probative value, for the reasons discussed above. In any case, regardless of whether Micelotta perceived Granata to be acting on behalf of JIB when he threatened to throw Micelotta down an elevator shaft in 1975, the relevant question is whether JIB manifested to Micelotta that Granata had authority to act on its behalf.

to the jury...." *Id.* (emphasis added). Here, for the reasons discussed above, plaintiffs have not submitted any facts that support their claim of agency, under either an actual authority or an apparent authority theory. No reasonable juror could conclude that an agency relationship existed on the basis of the facts plaintiffs have presented. Summary judgment in JIB's favor was therefore appropriate.

## II. Local 3's Motion for Reconsideration

In its prior Order, the court denied in part Local 3's motion for summary judgment as to plaintiffs' claims under § 303 of the Labor Management Relations Act, 29 U.S.C. § 187, and as to their state law tort claims, with the exception of those claims that are clearly time-barred. Local 3 now seeks reconsideration of that portion of the Order, claiming that the court should have dismissed outright the claims of plaintiffs All–Phase Electric Home Power Corp. ("All–Phase"), Expert Electric, Inc. ("Expert"), Kolsch Electric, Inc. ("Kolsch"), and TAP. In addition, Local 3 argues that the court should dismiss outright plaintiffs' state law claims.

With respect to the first argument, Local 3 first notes that, in its prior Order, the court held that, under the four-year statute of limitations for claims under § 303, plaintiffs cannot recover damages for any injury that occurred prior to June 18, 1989. Local 3 argues that plaintiffs have not established that any of the four plaintiffs it has identified suffered any injury on or after that date. The court agrees as to All–Phase, Expert, and Kolsch, but disagrees as to TAP.

To recover under § 303(b), a plaintiff must demonstrate an injury to business or property caused by a labor organization's violation of 29 U.S.C. § 158(b)(4). As Local 3 notes, plaintiffs have identified only a single instance in which a threat or secondary boycott caused injury to All–Phase's business or property. That incident occurred in 1987. Plaintiffs have not produced any evidence of injury to plaintiff Kolsch. With respect to plaintiff Expert, plaintiffs have produced evidence of a meeting in 1990 at which Van Arsdale attempted to pressure Anthony Cardillo, Eugene Iovine, Gaspare Lipari, and

Frank Micelotta to sign collective bargaining agreements with Local 3. Although this incident occurred within the limitations period, Local 3 is correct that Micelotta, the president of Expert, did not actually describe any injury to his business or property in the wake of this threat. Indeed, the latest injury that Micelotta described occurred in 1984. As the court overlooked these deficiencies in its prior order, reconsideration is appropriate.

Local 3 also contends that plaintiffs have not identified any evidence of injury to TAP that occurred within the limitations period. That contention is inaccurate. As plaintiffs note, Cardillo's affidavit refers to incidents in 1990 and 1993 in which TAP failed to get contracts. In light of the allegations concerning Van Arsdale's threats in 1990, these statements are sufficient to raise genuine issues of material fact. The court therefore declines to reconsider its decision as to plaintiff TAP.

With respect to plaintiff's state law claims, Local 3 argues that it is entitled to summary judgment (1) because these claims are preempted by federal law, and (2) because plaintiff has not demonstrated that the actions of any individuals were authorized or ratified by the union membership. Local 3 acknowledges that it did not present these arguments in its prior motion papers. Since a party may not advance new legal arguments on a motion for summary judgment, the court declines to consider these arguments at this time. To do so would prejudice plaintiffs, who have not had an opportunity to present factual material to respond to Local 3's new arguments.

Because the court must rule on the new legal issues presented by Local 3, it will treat Local 3's arguments concerning the state law claims as a new motion for summary judgment. Accordingly, plaintiffs are ordered to show cause by May 15, 1996, why summary judgment should not be granted for defendants on Count Eight of the complaint on the grounds identified by Local 3 in its motion for reconsideration. Plaintiffs may show cause by submitting any additional factual material or legal argument that would be appropriate in a motion under Fed.R.Civ.P.

56. Local 3 shall file any reply papers by May 20, 1996. The court will thereafter decide the motion expeditiously, so as not to delay trial of this matter.

### III. Plaintiff's motion for entry of partial judgment

■ Plaintiffs have also asked the court to direct entry of a final judgment on all counts of their complaint as to defendants JIB, AECI, and NYECA, and on Counts One through Six, the RICO and antitrust claims, as to Local 3. The purpose of this application is to allow them to pursue an immediate appeal as of right of the court's Order of February 9, 1996, pursuant to 28 U.S.C. § 1291. Plaintiffs subsequently asked the court to defer consideration of that motion, pending a decision on the motions for reconsideration. Having resolved those motions, the court now denies the request for entry of final judgment, for the reasons stated below.

■ In a case that involves multiple parties or multiple claims for relief, Fed.R.Civ.P. 54(b) permits the court to direct entry of a final judgment as to fewer than all of the claims or parties "only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment." This case involves both multiple claims and multiple parties. Certification is therefore appropriate if the court determines that no just reason exists for delay, and supports that determination with a reasoned analysis. *See, e.g., Harriscom Svenska AB v. Harris Corp.,* 947 F.2d 627 (2d Cir.1991). In making that determination, the court must decide whether plaintiff's RICO and antitrust claims are "inherently inseparable" from or "inextricably interrelated" to their § 303 and state law tort claims. *See Ginett v. Computer Task Group,* 962 F.2d 1085, 1096 (2d Cir.1992) ("Only those claims "inherently inseparable" from or "inextricably interrelated" to each other are inappropriate for rule 54(b) certification.).

At the outset, the court notes that this is not a case like *Ginett,* in which the district court had determined that the plaintiff was entitled to relief on one of his claims. *See id.* at 1090–91, 1097. In that case, failure to grant Rule 54(b) certification would have

served to delay plaintiff's recovery. In this case, by contrast, the court has determined that plaintiffs are not entitled to relief on many of their claims. Regardless of whether the court issues a final judgment at this stage, they will not be able to recover on those claims unless they prevail on appeal, and subsequently at trial. Consequently, failure to direct entry of a final judgment will not significantly delay plaintiff's recovery in this case.

■ Plaintiffs' principal argument in favor of Rule 54(b) certification is that, if this case proceeds to trial on the remaining claims, and this court's grant of summary judgment is subsequently reversed on appeal, they may be forced to proceed to another trial on the remaining claims. Plaintiffs argue that a second trial would involve many of the same issues and witnesses, and that they will incur substantial additional costs. This argument has some force. Rule 54(b) certification may be appropriate "where an expensive and duplicative trial could be avoided if, without delaying prosecution of the surviving claims, a dismissed claim were reversed in time to be tried with other claims." *Cullen v. Margiotta,* 811 F.2d 698, 711 (2d Cir.), *cert. denied,* 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987); *see also Hunt v. Mobil Oil Corp.,* 550 F.2d 68, 70 (2d Cir.) (affirming grant of Rule 54(b) certification where district judge made specific findings that second trial could pose additional expense to parties and that appeal would not delay trial or discovery), *cert. denied,* 434 U.S. 984, 98 S.Ct. 608, 54 L.Ed.2d 477 (1977).

In this case, the court cannot conclude that an immediate appeal would not necessitate a significant delay in the prosecution of the remaining claims. That distinguishes this case from *Hunt,* in which the court granted Rule 54(b) certification after dismissing a claim on a motion under Fed.R.Civ.P. 12(b)(6). Thus the dismissal in *Hunt* occurred early in the action, prior to the commencement of discovery. Here, the parties have already engaged in extensive discovery, and the case is essentially ready for trial on the narrow issues delimited in the court's Order of February 8, 1996. If the court were to follow the course urged by plaintiffs,

a trial on those claims would be delayed until the resolution of the appeal—a process that could take many months.

Furthermore, it is possible that a trial on the remaining claims will dispose of issues that could render plaintiff's appeal moot. As noted above, to recover on their claims under § 303, plaintiffs will be required to show an injury to business or property caused by Local 3's activities. The same requirement of injury to business or property is a critical element of plaintiff's claims under RICO and the Sherman Act. *See* 18 U.S.C. § 1964(c); 15 U.S.C. § 15. Like the § 303 claims, the RICO and antitrust claims are governed by a four-year statute of limitations. *See* 15 U.S.C. § 15b; *Agency Holding Corp. v. Malley–Duff & Associates*, 483 U.S. 143, 156, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (holding that four-year limitations period for antitrust statute applies to civil RICO actions). Furthermore, the actions that are alleged to be unfair labor practices for the purposes of § 303 are the same as the actions alleged to be predicate acts under RICO and actions in restraint of trade under the Sherman Act. Consequently, if the court were to enter final judgment on plaintiffs' RICO and antitrust claims, and a jury were to determine that some or all of the plaintiffs have not suffered any injury to their business or property, the RICO and antitrust claims might become moot. Under these circumstances, the court is persuaded that all of plaintiffs claims in this action are inextricably interrelated, and that they should try the claims that remain in this action before proceeding to the Second Circuit. *See Ginett*, 962 F.2d at 1095 ("We should avoid the possibility that the ultimate disposition of the claims remaining in the district court could either moot our decision on the appealed claims or require us to decide issues twice.").

## CONCLUSION

For the foregoing reasons, plaintiff's motion for reconsideration is denied. Local 3's motion for reconsideration is granted in part, and this action is dismissed with prejudice as to plaintiffs All–Phase, Expert, and Kolsch. In all other respects, Local 3's motion for reconsideration is denied. Furthermore, the court having been informed by plaintiffs' counsel that plaintiff Cunardi Contracting, Inc. has discontinued its participation, this action is dismissed with prejudice as to Cunardi. It is hereby ordered that plaintiffs shall show cause by May 15, 1996, why summary judgment should not be granted in favor of defendants on Count Eight of the complaint, and that Local 3 shall file any reply papers by May 20, 1996.

Plaintiffs' motion for entry of a partial judgment is denied.

**SO ORDERED.**